RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0211P (6th Cir.)
File Name: 02a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

JAMES HENRY CLARK,
  *Defendant-Appellant.*

No. 00-6428

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00097—John T. Nixon, District Judge.

Argued: April 24, 2002

Decided and Filed: June 20, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
SIMPSON, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. William Cohen, ASSISTANT UNITED STATES

———————————————

[*] The Honorable Charles R. Simpson III, United States District Judge for the Western District of Kentucky, sitting by designation.

1

ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

SIMPSON, D. J., delivered the opinion of the court, in which DAUGHTREY, J., joined. MOORE, J. (pp. 8-11), delivered a separate opinion concurring in part and dissenting in part.

————————

## OPINION

————————

SIMPSON, District Judge. Defendant-Appellant James Henry Clark ("Clark") appeals his conviction and sentence for bank robbery on the grounds that (1) there was insufficient evidence to support his conviction, because he was insane at the time of the commission of the offense, and (2) the district court erred in applying a two level enhancement under U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B3.1(b)(2)(F)(2000) for making a threat of death during the commission of the crime. Finding no merit to these contentions, we **AFFIRM** both the conviction and the sentence.

### I. FACTS

On June 22, 1998, a robber entered the main office of the First American Bank in Nashville, Tennessee, and approached a teller window. He handed the teller a note which read "I have a gun. Do what you are told and you wont [sic] get hurt." He told her to give him "hundreds and fifties," which she did. No weapon was displayed during the robbery. The robber took the money and calmly left the bank.

The teller identified James Henry Clark as the robber. Clark agreed to speak with law enforcement officials at the Nashville F.B.I. office. There, he was interviewed by police

person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery," the current version calls for "a fear of death." We should give effect to this change. I submit that a fear of death is qualitatively greater than the fear that application note 6 previously referenced. In short, I believe that district courts should not apply § 2B3.1(b)(2)(F) unless "the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." U.S.S.G. § 2B3.1 commentary, applic. note 6.

In this case, the demand note read as follows: "I have a gun. Do what you are told and you won[']t get hurt." This threat may suggest an intent to harm, but it in no way indicates an intent to kill or to cause the victim's death. I do not see how this note could instill a fear of death in a reasonable person, and therefore respectfully dissent from the majority opinion as to the sentencing issue.

person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

U.S.S.G. § 2B3.1 commentary, applic. note 6 (amended 1997). This note currently reads:

"A threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. Accordingly, the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute a threat of death. The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

U.S.S.G. § 2B3.1 commentary, applic. note 6. I quote both versions in full to highlight what has changed in application note 6 since we decided *Alexander* and what has not. The five examples in the note, which the Sentencing Commission retained in exactly the same form, all indicate an intent to kill or to cause the victim's death. The third example — "Give me the money or I will shoot you" — is a possible exception, but even it suggests the defendant's willingness to use a gun in such a way as to cause the victim's death.

While keeping the examples of a "threat of death" the same, the Sentencing Commission effectively heightened what courts should require before increasing offense levels under § 2B3.1(b)(2)(F). Whereas the pre-amendment version of application note 6 stated that sentences should be enhanced when the defendant's conduct "would instill in a reasonable

officer Roll. Clark admitted robbing the bank, and signed a confession. After obtaining the confession, Roll left the interview area. During Roll's absence, Clark told another police officer, Everett, that voices told him to rob the bank. Everett noted that Clark was calm, cooperative and talkative.

In a court proceeding one week later, officer Everett noted a marked difference in Clark's behavior. Clark seemed edgy and uneasy. He described his demeanor as "like a coiled spring." Clark's counsel questioned whether Clark was receiving his medication. Clark had a known history of mental illness.

On July 23, 1998, a federal grand jury indicted Clark on one count of bank robbery in violation of 18 U.S.C. § 2113(a).

In November of 1998, Dr. John Griffin, a psychiatrist retained for the defense, interviewed Clark in the United States Marshals Office for approximately one hour. Prior to the interview, Dr. Griffin reviewed Clark's medical records and information concerning the robbery. Dr. Griffin was not unfamiliar with Clark, as he had interviewed Clark seven years earlier in connection with another matter.

Based on this, Dr. Griffin concluded that at the time of the robbery, Clark was impaired in his ability to fully understand what he was doing and substantially impaired in his ability to understand the consequences. Dr. Griffin opined that Clark was a chronic paranoid schizophrenic and of limited intelligence. Dr. Griffin was not able to conclude with certainty, but believed that it was more likely than not that Clark was responding to auditory hallucinations telling him to rob the bank.

Clark was then sent to the United States Medical Center for Federal Prisoners in Springfield, Missouri, for evaluation. While at Springfield, he was interviewed six times. Dr. Cristina Pietz, a forensic psychologist assigned to Clark's case, found Clark fit to stand trial. She further found that, although he was suffering from chronic paranoid

schizophrenia, Clark knew what he was doing when he robbed the bank, and he understood that what he was doing was wrong. She based her opinion upon the series of interviews, documentation concerning Clark's psychiatric history, and the way in which the robbery itself was conducted.

At trial, the defendant offered an insanity defense. The jury heard evidence concerning the robbery, and heard the psychiatric experts' conflicting testimony concerning Clark's sanity at the time of the crime. Defense counsel did not move for judgment of acquittal at the close of the evidence. On April 13, 2000, the jury returned a verdict of guilty.

On September 26, 2000, the district court entered judgment, sentencing Clark to seventy-eight months' imprisonment and a three-year term of supervised release. The court imposed this sentence after finding that Clark had made a threat of death during the commission of the robbery, warranting a 2 level enhancement §2B.3.1(b)(2)(F). This timely appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defense counsel's failure to move for judgment of acquittal constituted a waiver of Clark's right to challenge the sufficiency of the evidence on appeal. *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir. 1992)(en banc), *cert. denied*, 508 U.S. 975 (1993). Our review is therefore "limited to determining whether there was a 'manifest miscarriage of justice'...[which] exists only if the record is 'devoid of evidence pointing to guilt.'" *United States v. Price*, 134 F.3d 340, 350 (6th Cir.)(citations omitted), *cert. denied,* 525 U.S. 845 (1998).

Section 17(a) states, in pertinent part, that an insanity defense "is an affirmative defense to a prosecution under any Federal statute." A defendant must establish that "at the time of the commission of the acts constituting the offense, the

As for the application of U.S.S.G. § 2B3.1(b)(2)(F), I believe that the analysis in *United States v. Alexander*, 88 F.3d 427 (6th Cir. 1996), is more compelling than the majority allows, even though the current version of this section does not require an express threat of death. In *Alexander*, we read the pre-amendment § 2B3.1(b)(2)(F) narrowly, concluding "that to satisfy the qualifier 'express,' a defendant's statement must distinctly and directly indicate that the defendant intends to kill or otherwise cause the death of the victim." *Alexander*, 88 F.3d at 431. I understand this holding to have two parts. First, it defines an "express" threat of death as one that is made "distinctly and directly." *Id.* Second, it specifies that an express "threat of death" is one that indicates a defendant's "inten[t] to kill or otherwise cause the death of the victim." *Id.* Therefore, the deletion of the word "express" in amended § 2B3.1(b)(2)(F) is not dispositive. Under my understanding of *Alexander*, an indistinct or indirect statement that indicates something less deadly than an intent to kill or to cause the victim's death would not be a "threat of death" for purposes of amended § 2B3.1(b)(2)(F).

This position finds support in the Sentencing Guidelines commentary. Before the amendment to § 2B3.1(b)(2)(F), application note 6 read as follows:

An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable

---

**CONCURRING IN PART, DISSENTING IN PART**

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I concur in Part II.A. of the majority opinion, but I write separately to clear up any confusion that may arise from our previous discussions of the insanity defense in federal prosecutions. Because I believe that a defendant must threaten more than harm to warrant the application of a two-level enhancement under amended U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B3.1(b)(2)(F), I respectfully dissent from Part II.B.

As noted in the majority opinion, we have clearly recognized that 18 U.S.C. § 17 places the burden of proving an insanity defense on the defendant. *See United States v. Kimes*, 246 F.3d 800, 806 & n.2 (6th Cir. 2001), *cert. denied*, 122 S. Ct. 823 (2002); *United States v. Davis*, 93 F.3d 1286, 1295 n.8 (6th Cir. 1996). Defendants have borne this burden since 1984, when Congress enacted the Insanity Defense Reform Act, 18 U.S.C. §§ 17, 4241-4247, in response to the acquittal on all charges of John Hinckley for his attempted murder of President Ronald Reagan. *See Shannon v. United States*, 512 U.S. 573, 576-77 (1994). In *United States v. Searan*, 259 F.3d 434 (6th Cir. 2001), however, the panel erroneously relied on *Davis v. United States*, 160 U.S. 469 (1895), in holding that "[i]n federal law, the government bears the burden of proving sanity after the defendant affirmatively asserts an insanity defense." *Searan*, 259 F.3d at 450. *Searan* thus overlooked not only the statute itself but also *Shannon* and the Sixth Circuit precedents of *Davis* and *Kimes*, which, as prior decisions, were controlling authority. *See United States v. Humphrey*, 287 F.3d 422, 452 (6th Cir. 2002). I therefore concur with the majority about the appropriate application of § 17 and emphasize that *Searan* has no precedential value on this issue.

---

defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." *Id.*

The United States has the burden of proving every element of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). However, the defendant here presented a defense of diminished responsibility, and thus bore the burden of proving insanity by clear and convincing evidence. 18 U.S.C. § 17(b); *United States v. Kimes*, 246 F.3d 800 (6th Cir. 2001), (*citing*, 18 U.S.C. § 17(a) and (b)), *cert. denied*, 122 S.Ct. 823 (2002)(distinguishing two different types of mental disease or defect -- "diminished responsibility" where defendant's insanity absolves him of criminal responsibility, and "diminished capacity" where the mental condition is such that the defendant cannot form the culpable mental state.)

The psychiatric experts agreed that Clark suffered from chronic paranoid schizophrenia, but their opinions were diametrically opposed with respect to the question of whether this mental disease or defect rendered him unable to appreciate the nature and quality or the wrongfulness of his acts.

The conclusion reached by Dr. Pietz, that Clark was not insane at time of the commission of the crime, was grounded on a thorough evaluation over an extended period of time at Springfield. Dr. Pietz considered that Clark had been taking anti-psychotic medication, that he had exhibited no symptoms of psychosis at the time of the robbery or a week later when interviewed. Although Clark revealed that he had heard voices telling him to rob the bank, he also told Dr. Pietz that he was usually able to ignore such auditory hallucinations. Clark's reportedly calm behavior and seemingly well thought out plan at the time of the crime was contrasted with his "floridly psychotic" behavior at times in the past when he was not taking his medication.

We find no miscarriage of justice in the jury's choice to credit the opinion of Dr. Pietz over that of Dr. Griffin in this case. The jury could properly accept the testimony of one

expert and reject that of the other. *United States v. Shepard*, 538 F.2d 107, 110 (6th Cir. 1976). We therefore affirm Clark's conviction.

### B. Sentencing Guidelines Application

At sentencing, the district court applied a two level enhancement under U.S.S.G. § 2B3.1(b)(2)(F), finding that Clark made a threat of death during the commission of the robbery. The district court stated that "the language 'I have a gun, do what I say, nobody will get hurt'...is a threat that a reasonable person would consider putting one in danger of death." Clark challenges this application of the enhancement, contending that the note does not constitute a threat of death.

Clark relies on *United States v. Alexander*, 88 F.3d 427 (6th Cir. 1996), in which a panel of this court held that a note containing the language "I've got a bomb in my case and I've got a gun" did not qualify for enhancement under § 2B3.1(b)(2)(F).

That case was decided under a former version of the Guideline, however, which provided for a two level increase for making an *express* threat of death. The *Alexander* court held that for the enhancement to apply, "a defendant's statement must distinctly and directly indicate that the defendant intends to kill or otherwise cause the death of the victim." *Alexander*, 88 F.3d at 431.

The Sentencing Commission deleted the word "express" from the guideline in 1997[1], thus removing the underpinning of *Alexander*. Clark's sentencing in 2000 was based on the post-1997 guideline in which the death threat need not be "express" for the enhancement to apply.

---

[1] The commentary now states that "the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply." U.S.S.G. § 2B3.1 Commentary, n. 6.

Examples of threats of death are set out in the Commentary, Application Note 6:

> For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)", "Give me the money or you are dead" would constitute a threat of death. The court should consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.

Our task, then, is to determine whether a note stating "I have a gun. Do what you are told and you wont [sic] get hurt," unaccompanied by any gestures or display of a weapon, would instill in a reasonable person a fear of death. We do not disagree with the district court's conclusion that it would. Reading the two phrases of the note together, the clear implication of the message is that failure to cooperate would result in being shot then and there by a gun. This would instill in any reasonable person, such as the teller in this case, a fear of death. The district court did not err in applying the enhancement under § 2B3.1(b)(2)(F).

Clark's conviction and sentence are therefore **AFFIRMED**.