

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2007

# USA v. Watson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4354

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Watson" (2007). *2007 Decisions*. Paper 98.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/98

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4354
_____

UNITED STATES OF AMERICA

v.

ANGELA WATSON,

Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cr-00005-1)
District Judge: Honorable Marvin Katz

_____

Submitted Under Third Circuit LAR 34.1(a)
December 10, 2007

Before: McKEE, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: December 11, 2007)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Angela Watson appeals her 46-month sentence following a guilty plea to two

counts of bank robbery in violation of 18 U.S.C. § 2113(a).

# I.

As we write for the parties, we state only the facts essential to our decision. On November 4, 2005, Watson entered a branch of Bank of America in Jenkintown, Pennsylvania, approached a teller, and handed her a note that read: "I HAVE A <u>GUN</u> GIVE ME THE MONEY NOW! NO DYE PACKS!!!!" The teller gave Watson an envelope with $850.00. Some thirty minutes later, Watson walked into a Citizens Bank branch in Philadelphia and handed a teller a note that read: "I HAVE A <u>GUN</u> GIVE ME THE MONEY NOW! NO DYE PACKETS!!! LARGE BILLS FIRST!" The teller gave Watson $650.00, including $50.00 in "bait bills."

# II.

Watson claims that the District Court erred by imposing two sentencing enhancements and by failing to consider the factors set forth in 18 U.S.C. § 3553(a). We "apply a plenary standard of review over the District Court's interpretation of the Sentencing Guidelines." *United States v. Moorer,* 383 F.3d 164, 167 (3d Cir. 2004) (citation omitted). We review the District Court's factual determinations for clear error, and its sentence will be affirmed if it is reasonable. *See United States v. Grier*, 475 F.3d 556, 569 (3d Cir. 2007) (en banc). To determine whether the District Court acted reasonably, we must be satisfied that the court properly exercised its discretion by giving meaningful consideration to the relevant factors under 18 U.S.C. § 3553(a). *See United States v. Kononchuk*, 485 F.3d 199, 204 (3d Cir. 2007).

A. *The District Court Did Not Err In Applying USSG § 2B3.1(b)(2)*

2

Watson contends that the District Court erred when it increased her total offense level two points pursuant to § 2B3.1(b)(2)(F) of the United States Sentencing Guidelines (USSG) because she made death threats during the robberies. The gravamen of Watson's argument is that the record demonstrates that the tellers she victimized did not subjectively believe that she threatened them with death. This issue is a red herring, however, because we apply an objective standard to the question of death threats for purposes of this Guidelines enhancement. *See United States v. Thomas*, 327 F.3d 253, 255 (3d Cir. 2003) ("the focus is on the reasonable response of the victim of the threat."); *see also* USSG § 2B3.1 app. n.6 (stating that "the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply" and directing courts to "consider that the intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.").

In the case at bar, Watson handed the tellers similar notes, both of which stated: "I HAVE A GUN GIVE ME THE MONEY NOW!" In a written order filed after sentencing, the District Court explained that the enhancement of USSG § 2B3.1(b)(2)(F) applied on these facts. We have held that bank robbers who pass demand notes indicating that they have guns or are otherwise capable of inflicting harm if their demands are not met have engaged in conduct which would instill a fear of death in a reasonable bank teller. *See United States v. Day*, 272 F.3d 216, 217 (3d Cir. 2001) (notes to tellers which read: "Put some money on the counter. No dye packs. I have a gun" conveyed a threat of

3

death under § 2B3.1(b)(2)(F)); *see also United States v. Figueroa*, 105 F.3d 874, 879-80 (3d Cir. 1997) (note which read "I have a gun. Give me all the money" conveyed a threat of death for purposes of the former, narrower version of § 2B3.1(b)(2)(F)). Our decisions in *Day* and *Figueroa* demonstrate that the District Court did not err by applying USSG § 2B3.1(b)(2)(F) in this case.

B.  *The District Court Did Not Err In Applying USSG § 2B3.1(b)(1)*

Watson next argues that the District Court erred in applying USSG § 2B3.1(b)(1), which permits a District Court to impose a two-level increase when "the property of a financial institution was taken." Watson claims that the currency she took was not "property" because "the commonsense meaning of the word 'property' must . . . mean instruments such as certificates of deposit or other non-monetary property."

Although the Sentencing Guidelines do not define "property," "[t]he background material to § 2B3.1(b)(1) indicates that the Sentencing Commission sought to punish robberies of financial institutions and post offices more severely than generic robberies because these entities typically keep large amounts of cash, and are therefore particularly attractive robbery targets." *See United States v. Alexander*, 48 F.3d 1477, 1491 (9th Cir. 1995) (citation omitted). Watson's argument that the term "property" excludes "cash" would turn Guidelines § 2B3.1(b)(1) on its head insofar as it would require us to believe that the Commission defined "property" in such a way as to enhance the punishment for the theft of anything from those banks *except* the one thing most likely to attract bank robbers in the first place: cash. Such an interpretation of § 2B3.1(b)(1) would be absurd,

4

and we will not indulge in absurdist constructions of the Guidelines.  *See United States v. Huff,* 873 F.2d 709, 713 (3d Cir. 1989).[1]

    C.      *Remand Is Necessary To Permit The District Court To Explain Its Application Of The § 3553(a) Factors*

Watson also argues that the District Court erred by not addressing the factors set forth in 18 U.S.C. § 3553(a).  The Government concedes that the District Court "did not present any explanation during the sentencing hearing of its assessment [under § 3553(a)]," but argues that because Watson "did not object" when the District Court ended the hearing without making a record of its § 3553(a) analysis, we review for plain error.

This argument is foreclosed by our decision in *Grier,* which required us to determine the reasonableness of a sentence where the District Court stated "that 100 months is reasonable in view of the considerations of [18 U.S.C. § ] 3553(a)" and "[d]efense counsel did not object to the District Court's explanation for the sentence." *Grier,* 475 F.3d at 561.  Although Grier failed to object, we did not apply plain-error review because we noted that "[a]n objection to the reasonableness of the final sentence will be preserved if, during sentencing proceedings, the defendant properly raised a

---

    [1] Nor are we persuaded by Watson's argument that reading the term "property" in USSG § 2B3.1(b)(1) to include the cash stolen would subject bank robbers who steal more than $10,000.000 to impermissible double-counting under § 2B3.1(b)(7).  *See* USSG § 2B3.1(b)(7).  "[O]nly when the Guidelines explicitly prohibit double counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline already takes into account the same conduct." *See United States v. Wong,* 3 F.3d 667, 671 (3d Cir. 1993).

meritorious factual or legal issue relating to one or more of the factors enumerated in 18 U.S.C. § 3553(a)." *Grier*, 475 F.3d at 571 n.11 (citation omitted).

In the case at bar, Watson presented evidence and argument that a "very restrictive house arrest" would be a proper sentence because of her relatively sparse prior criminal history and her supportive family situation — particularly given her medical diagnosis of bipolar disorder and her past history of drug abuse — evidence which directly implicated 18 U.S.C. § 3553(a)(2)(D). Additionally, Watson filed a motion for a downward departure pursuant to USSG § 5K2.20.

At the sentencing hearing, the District Court engaged in no discussion of the § 3553(a) factors. Instead, after hearing argument about the appropriate sentence, and following testimony by Watson and her family, the District Court stated:

> Thank you, counsel. [¶] Defendant is committed to the custody of the Bureau of Prisons for a term of 46 months, to be followed by three years supervised release. I'm required to impose a special assessment of $200. And I'll order restitution of $850. [¶] Defendant has the right to appeal. If she cannot afford the cost of an appeal, she may apply for an appeal *in forma pauperis*. If the defendant requests, the Clerk of Court will prepare and file forthwith a notice of appeal on her behalf. That appeal should be filed within ten days.

After both parties indicated that they had nothing further, the District Court adjourned the sentencing hearing and issued a written order denying Watson's motion for a downward departure pursuant to § 5K2.20 and explaining its rationale. But the District Court failed to apply § 3553(a) or address Watson's contention that her alleged need for

6

treatment could not be met in the federal penitentiary, which is a colorable issue related to § 3553(a)(2)(D).

In sum, because the record in this case relative to the application of the § 3553(a) factors is insufficient for meaningful appellate review, we must remand the case for resentencing. Upon remand, our statement in *Grier* applies with equal force here:

> We do not suggest that the original sentence reflects anything less than the sound judgment of the District Judge, or that the final sentence should necessarily differ from the one previously imposed. The nature of the final sentence is, as always, a matter within the discretion of the District Court. We do ask, however, that the District Court explain its decision on the record, specifically by reference to the factors of 18 U.S.C. § 3553(a) . . .

*See Grier,* 475 F.3d at 572. We emphasize that "[t]he court need only discuss those grounds properly raised by the parties at the time of sentencing." *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (citation omitted). "This means counsel for the parties should clearly place the sentencing grounds they are raising on the record at the time of the sentencing hearing." *Id.* (footnote omitted).

## III.

For all the foregoing reasons, we will affirm the District Court's application of the enhancements provided by USSG §§ 2B3.1(b)(2) and 2B3.1(b)(1), but we will vacate Watson's sentence and remand the case to the District Court for resentencing consistent with this opinion.