**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TOMMY LEE ELLIS,

Defendant - Appellant.

No. 06-6340

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 06-CR-01-C)**

---

Submitted on the briefs:

Bill Zuhdi, Bill Zuhdi Attorney at Law, P.C., Oklahoma City, Oklahoma, for Defendant - Appellant.

John C. Richter, United States Attorney, (Jonathon E. Boatman, Assistant United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

---

Before **BRISCOE**, **SEYMOUR**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Following a bench trial Tommy Lee Ellis was convicted in the United

States District Court for the Western District of Oklahoma of committing a bank

robbery on December 12, 2005. He was sentenced on October 24, 2006, to 210 months' imprisonment. On appeal he raises three issues. First, he argues that there was insufficient evidence to convict him of bank robbery because he did not personally rob the bank and the indictment did not properly charge him with aiding and abetting. Second, he argues that his sentence was procedurally and substantively unreasonable. Third, he argues that the district court violated the Sixth Amendment when it enhanced his sentence under the United States Sentencing Guidelines based on facts it found by a preponderance of the evidence. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.     BACKGROUND

The perpetrator of the bank robbery was Vanessa Martinez. About one week before the robbery Mr. Ellis persuaded her to commit the crime to solve both of their financial problems. He told her that it would be easy, and hinted that he had obtained his car, a maroon Monte Carlo, with the proceeds of an earlier bank robbery. He estimated that they would net about $8,000. Ms. Martinez agreed to rob the bank.

The night before the robbery, Mr. Ellis told Ms. Martinez that the robbery would take place at a bank inside a local grocery store. He told her to wear comfortable clothing so that she could run. When he arrived at her house the next morning, he wrote a demand note. They drove to a thrift store, bought a bag to carry the money that they intended to steal, and then drove to the grocery store.

-2-

He instructed her to wait in the car while he checked to see if there was any security. When he returned, he gave her the demand note to hand to the bank teller. It read: "I have a gun and I want you to give me all of your large bills or I'll use it!! Place all of it in the bag." R. Vol. 1, Doc. 1 at 3. At the end of the note she added "From all registers," because she did not wish to speak to the tellers during the robbery. *Id*. Vol. 7 at 48.

Ms. Martinez walked into the store and handed the note and the bag to the assistant branch manager of the bank inside. He removed money from his drawer and the drawers of two other tellers and placed it in the bag. Included in the cash was "bait" money whose serial numbers had been previously recorded. Ms. Martinez took the money and left the bank.

A bank customer, Tad Dozier, observed Ms. Martinez at the bank and concluded that she was committing a robbery when he saw the assistant branch manager remove money from the other tellers' drawers. Mr. Dozier left the bank before Ms. Martinez and waited in his car with the engine running until he saw her leave the bank and enter Mr. Ellis's Monte Carlo. He followed the vehicle and called 911, stating that he had witnessed a bank robbery and that he was following the robber. He described the vehicle to the police.

Officers eventually pulled Mr. Ellis over because his car matched Mr. Dozier's description. Mr. Ellis asked why he was being pulled over, telling the officers that Ms. Martinez was his girlfriend and that he was driving her home

because she was ill. Mr. Ellis and Ms. Martinez were detained. A detective who had viewed a still photo taken during the robbery came to where the two were being held and identified Ms. Martinez as the robber.

Mr. Ellis and Ms. Martinez were arrested and taken to the police station. Officers found $580 in Mr. Ellis's boot. The bank had reported that $570 had been stolen. The serial numbers on some of the recovered bills matched the serial numbers from the "bait" bills.

Ms. Martinez pleaded guilty and testified against Mr. Ellis. On the day that he was convicted he filed a motion for acquittal on the ground that the indictment did not properly charge him with aiding and abetting under 18 U.S.C. § 2, because it did not contain language describing how he had aided or abetted the offense. The motion was denied.

At sentencing, Mr. Ellis asked the district court to give him a below-Guidelines sentence based on various mitigating factors. The court imposed a sentence of 210 months' imprisonment, the bottom of the Guidelines range.

## II. ANALYSIS

### A. The Adequacy of the Indictment

Mr. Ellis argues that his conviction should be reversed because the government did not prove that he personally committed the bank robbery and the indictment failed to charge him with aiding and abetting. Although the indictment cites the aiding-and-abetting statute, 18 U.S.C. § 2, it does not include

any language describing Mr. Ellis's role.  As Mr. Ellis argues, a citation to a statute is not part of the indictment and cannot substitute for a recitation of the elements of the offense.  *See* Fed. R. Crim. P. 7, advisory committee note 3 to subdivision (c) (1944); *United States v. Gama-Bastidas*, 222 F.3d 779, 787 (10th Cir. 2000).  He correctly concedes, however, that the aiding-and-abetting statute "applies implicitly to all Federal offenses" and that "even though the defendant is charged with commission of the substantive offense, proof that he or she only aided or abetted the commission of the crime will support the indictment."  Aplt. Br. at 30; *see United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996).  To be sure, an indictment must "contain[] the elements of the offense charged." *Hamling v. United States*, 418 U.S. 87, 117 (1974).  But aiding and abetting is not an independent crime.  *See Scroger*, 98 F.3d at 1262.  The offense was bank robbery, and its elements are alleged in the indictment.  The indictment was adequate to sustain Mr. Ellis's conviction.  He does not claim that he lacked notice of the government's allegations against him.

### B.    Sentencing Issues

Mr. Ellis challenges the procedural and substantive reasonableness of his sentence.  He argues that (1) he should have received a two-level downward adjustment for acceptance of responsibility under United States Sentencing Guideline (USSG) § 3E1.1; (2) because he did not personally rob the bank, his offense level should not have been calculated under (a) the Robbery guideline,

USSG § 2B3.1, which sets a base offense level as well as enhancements for taking the property of a financial institution and for making a death threat, and (b) USSG § 3B1.1(c), which provides for a two-level enhancement for organizing the offense; (3) the enhancement for making a death threat should not have been applied because Ms. Martinez did not threaten to kill anyone; (4) he should not be considered a career offender under USSG § 4B1.1; and (5) his sentence was substantively unreasonable.

After *United States v. Booker*, 543 U.S. 220 (2005), we review a sentence for reasonableness. *See United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008). A sentence is procedurally unreasonable if the court "'fail[ed] to calculate (or improperly calculat[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence.'" *Id.* (quoting *Gall v. United States*, 128 S.Ct. 586, 597 (2007)). A sentence is substantively unreasonable if, considering the factors set forth in 18 U.S.C. § 3553(a), the sentence is unreasonable in length. *Id.*

We begin with Mr. Ellis's procedural arguments, all of which challenge the Guidelines calculation. When assessing that calculation, "we review factual findings for clear error and legal determinations de novo." *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).

First, Mr. Ellis claims entitlement to a two-level downward adjustment for acceptance of responsibility under USSG § 3E1.1. He asserts that he attempted to plead guilty to aiding and abetting and that he went to trial only to preserve his argument that he was not properly charged under the indictment. He also argues that he is entitled to the adjustment because he waived his right to a jury trial and was tried by a judge. The district court properly rejected these arguments. Mr. Ellis never asked to enter a conditional plea, nor did he inform the government that he acknowledged guilt. On the contrary, he put the government to its proof at trial, and cross-examined the witnesses against him on factual matters. Only in rare cases can a court find that a defendant accepted responsibility despite proceeding to trial. *See United States v. Portillo-Valenzuela*, 20 F.3d 393, 394–95 (10th Cir. 1994); USSG § 3E1.1 cmt. n.2 (adjustment is inapplicable to defendant who does not admit guilt before being convicted, although the adjustment may apply if defendant went to trial only to preserve legal arguments unrelated to factual guilt). The district court could properly find that Mr. Ellis had not accepted responsibility.

Second, Mr. Ellis argues that the various provisions of USSG § 2B3.1 and § 3B1.1 did not apply to him because he did not personally rob the bank. He apparently believes that these provisions apply only to the principal. He is incorrect. According to the Guidelines, "The offense level [for aiding and

-7-

abetting] is the same level as that for the underlying offense." USSG § 2X2.1. The same is true for enhancements. *See id*. § 1B1.3(a)(1)(A); *id.* cmt. n.1.

Third, Mr. Ellis argues that the enhancement under USSG § 2B3.1(b)(2)(F) does not apply here because Ms. Martinez never actually threatened to kill anyone. That section applies a two-level enhancement if a "threat of death" is made. USSG § 2B3.1(b)(2)(F). The threat can be "an oral or written statement, act, gesture, or combination thereof." *Id.* cmt. n.6. The enhancement is meant to punish an offender for "engag[ing] in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *Id.* The note handed to the assistant branch manager stated: "I have a gun and I want you to give me all of your large bills or I'll use it!! Place all of it in the bag. From all registers." R. Vol. 1, Doc. 1 at 3. In *United States v. Arevalo*, 242 F.3d 925, 928 (10th Cir. 2001), we held that the words "I have a gun and am willing to use it," constituted a death threat under § 2B3.1. Here, Ms. Martinez did not merely say that she was *willing* to use the gun, but said that she *would* use the gun if the tellers did not "give [her] all of [their] large bills." R. Vol. 1, Doc. 1 at 3. The district court properly applied § 2B3.1.

Fourth, Mr. Ellis argues that he was not a career offender for the purposes of USSG § 4B1.1. A defendant is a career offender if (1) he was at least 18 years old at the time of the instant offense; (2) the instant offense is a crime of violence or a drug offense; and (3) he has at least "two prior felony convictions of either a

crime of violence or a controlled substance offense." USSG § 4B1.1(a). The district court found that he was a career offender because he was over 18, the instant offense was a bank robbery, which is a violent felony, and he had prior convictions for robbery with firearms and escape from a penal institution, both of which are crimes of violence. Mr. Ellis claims that his escape from a penal institution should not be considered a crime of violence. But our precedent is clearly to the contrary. *See United States v. Mitchell*, 113 F.3d 1528, 1533 n.2 (10th Cir. 1997). *But see Chambers v. United States*, No. 06-11206, WL 1775023 (S. Ct. Apr. 21, 2008) (grant of certiorari on the issue). He also argues that his convictions for escape from a penal institution and for robbery with firearms should not be counted separately under USSG § 4B1.1. Under USSG § 4B1.2(c)(2) a defendant has "'two prior felony convictions'" only if the sentences for the two convictions are counted separately. The 2006 version of the Guidelines, which governs Mr. Ellis's sentence, *see* USSG § 1B1.11(a), states that whether sentences are counted separately depends on whether they were imposed in unrelated cases, *see* USSG § 4A1.2 (2006). To support his contention that his sentences should not be counted separately, Mr. Ellis relies on commentary stating that sentences are considered related if they were for offenses that were consolidated for sentencing. *See* USSG § 4A1.2, cmt. n.3 He notes that his current sentences for the prior robbery and his escape were imposed at the same time. But the statement on which he relies does not govern here because it

-9-

applies only when the two offenses were not separated by an intervening arrest. *See id.*[1] Mr. Ellis's escape was from his incarceration on the robbery charge. The escape was well after his arrest for robbery. It is therefore irrelevant that when he was sentenced for his escape, the court also resentenced him for the robbery, lifting the previously suspended portion of that sentence. The career-offender enhancement was properly imposed.

Finally, although Mr. Ellis's brief states that he is claiming that his sentence is substantively unreasonable, he offers no argument beyond challenging the Guidelines calculations. In any event, the length of his sentence, which was at the bottom of the advisory Guidelines range, was eminently reasonable. *See Kristl*, 437 F.3d at 1054 (within-Guidelines sentence is presumptively reasonable).

## C.    Alleged *Booker* Violation

Mr. Ellis argues that the district court violated his Sixth Amendment right to a jury trial by enhancing his sentence based on facts found by the judge by a preponderance of the evidence. We held to the contrary in *United States v.*

---

[1] The former comment 3 to USSG § 4A1.2 was stricken by the Sentencing Commission's Guidelines Amendment No. 709, effective November 1, 2007. *See* USSG supp. to app. C, Amendment 709. The amendment inserted some of the text from former comment 3 into a new § 4A1.2(a)(2), which states that sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest. *Id.* The new § 4A1.2(a)(2) also states that if there was no intervening arrest, the sentences are counted separately unless, among other things, sentencing occurred on the same day.

-10-

*Dalton*, 409 F.3d 1247, 1252 (10th Cir. 2005).  Nevertheless, he argues that we should revisit our decision in light of the Supreme Court's decision in *Cunningham v. California*, 127 S.Ct. 856 (2007), which held California's sentencing scheme to be unconstitutional.  But California law called for mandatory sentencing, unlike the federal Sentencing Guidelines rendered advisory by *Booker*.  *See id.* at 869–70 (distinguishing California sentencing from post-*Booker* federal sentencing).  Accordingly, we reject this argument.

## III.   CONCLUSION

We AFFIRM Mr. Ellis's conviction and sentence.