**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BENITO GARCIA,

Defendant-Appellant.

No. 07-1163

(D. Colorado)

(D.C. No. 05-cr-00404-REB-5)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Benito Garcia appeals the district court's sentence imposed for his jury conviction for a drug conspiracy conviction. He argues that the district court did not make particularized findings as to (1) the scope of the criminal

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

activity he agreed to undertake regarding the conspiracy, and (2) the total amount of drugs involved that were foreseeable to him. Reviewing for plain error, we affirm Mr. Garcia's sentence.

## I. BACKGROUND

Mr. Garcia became the focus of a Boulder County (Colorado) Drug Task Force investigation that initially centered on Donald Jason Skinner in May 2004. Mr. Skinner was identified as the leader of a drug distribution organization (hereinafter "SDO"), and the purpose of the investigation, which involved fifteen to twenty local law enforcement officers and eventually a number of DEA agents, was to observe Mr. Skinner in order to identify his associates and the source of the drugs.

In the course of the investigation, the officers obtained Mr. Skinner's cell phone records and conducted extensive surveillance of the SDO through various methods, including the use of global positioning tracking devices installed on Skinner's vehicles. An undercover detective, Janet Aguirre, was eventually able to make seven controlled purchases of drugs from the SDO between May 10 and July 19, 2005. In addition, two bags containing methamphetamine were found hidden under the hood of one of Mr. Skinner's cars on May 24, 2005. On September 7, 2005, the investigators executed an arrest warrant for Mr. Skinner and search warrants for locations used by the SDO for drug distribution activities.

Mr. Skinner decided to cooperate with the investigation and supplied information about the source of his drugs, his associates in the SDO. He also initiated monitored contacts with other SDO participants and suppliers. Mr. Skinner identified Mr. Garcia as a delivery person for the drugs supplied by Santiago Mena-Flores, nicknamed "Chago." Mr. Skinner stated he met with Mr. Garcia at least fifty times. Other witnesses also described Mr. Garcia as a delivery person for "Chago." A jury convicted Mr. Garcia of conspiracy to possess with the intent to distribute more than fifty grams of methamphetamine (actual); more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a quantity of a mixture and substance containing a detectable amount of cocaine and a quantity of a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(C) and (b)(1)(D); and 18 U.S.C. § 2.

The government filed a sentencing statement claiming that the conspiracy involved the distribution of more than 15 kilograms of methamphetamine, establishing a starting base offense level of 38 as provided by U.S.S.G. § 2D1.1(c)(1). The defendant's sentencing statement urged that a better view of the evidence established a drug quantity at 12 kilograms, based on the total quantity estimated by the government in plea agreements with Mr. Garcia's codefendants. Mr. Garcia also pointed out that

no independent evidence supported the trial testimony quantity estimates of his coconspirators that the total quantity of methamphetamine exceeded 15 kilograms over the course of the conspiracy. According to Mr. Garcia, the resulting base offense level would be 36 pursuant to U.S.S.G. § 2D1.1(c)(2).

In the presentence report (PSR), the probation officer urged the adoption of the government's position. Mr. Garcia filed three objections to the PSR, arguing that (1) for the reasons proffered in his sentencing statement, the base offense level should be 36, not 38; (2) he should receive a mitigating role adjustment under U.S.S.G. § 3B1.2; and (3) he should receive a safety-valve reduction under U.S.S.G. § 5C1.2.

The parties agreed that Mr. Garcia's mitigating role in the offense justified a two-level downward adjustment pursuant to U.S.S.G. § 3B1.2. The parties and the probation officer also agreed that Mr. Garcia qualified for "safety valve" relief pursuant to U.S.S.G. § 5C1.2. These provisions triggered additional decreases under U.S.S.G. § 2D1.1(a)(3) and (b)(11) to the offense level. The application of these decreases resulted in a total offense level of 30 under the government's version and 29 under the defendant's version. The resulting imprisonment ranges were 97 to 121 months' imprisonment under the government's position or 87 to 108 months' imprisonment under Mr. Garcia's analysis.

The district court resolved this dispute at the sentencing hearing in

favor of the government's position.  The court then imposed an imprisonment term of 97 months.

## II. DISCUSSION

Mr. Garcia challenges the district court's lack of particularized findings as to the scope of the conspiracy and as to the amount of the contraband underlying the imposition of a 97-month sentence.  Mr. Garcia maintains that the trial evidence did not establish when he joined the conspiracy, how often he made deliveries, or the quantities involved in each delivery.  Because the district court made no findings as to the extent and scope of his role in the conspiracy, or as to the total amount of drugs involved that were foreseeable to him, he argues that his sentence is unreasonable.

### A. Standard of Review

Our appellate review of Mr. Garcia's sentence "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008).  Here, Mr. Garcia "challenges only the procedural reasonableness of his sentence, which requires, among other things, a properly calculated Guidelines range." *United States v. Saavedra*, 523 F.3d 1287, 1289 (10th Cir. 2008).  *See United States v. Ellis*, 525 F.3d 960, 964 (10th Cir. 2008)

("A sentence is procedurally unreasonable if the court failed to calculate (or improperly calculated) the Guidelines range, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, selected a sentence based on clearly erroneous facts, or failed to adequately explain the chosen sentence.") (internal alterations and quotations omitted). In determining whether the district court correctly calculated the recommended Guidelines range through application of the Guidelines, we review de novo the district court's legal conclusions and any factual findings for clear error, giving due deference to the district court's application of the Guidelines to the facts. *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006).

Mr. Garcia argues that because he sought a lower sentence before the district court, he preserved his objection to the calculus used by the district court, and therefore, we review for harmless error. The government acknowledges that Mr. Garcia asked the district court to hold him accountable for only 12 kilograms of contraband, rather than 15 kilograms. In so doing, Mr. Garcia pointed to the testimony of certain co-conspirators who pleaded guilty and whose relevant offense conduct was established by the plea agreement at 12 kilograms. The district court rejected this request and adopted the PSR's recommendation that the offense involved the distribution of more than 15 kilograms of methamphetamine. Mr. Garcia lodged no further objection to the district court's calculations.

-6-

As the government observes:

> [Mr. Garcia] did not assert below the argument that he now asserts to this Court: that, in calculating the advisory guideline range, the district court failed to adequately explain its determination of Defendant's relevant offense conduct by making "detailed and particularized findings" about the scope of [Mr. Garcia]'s agreement with the other conspirators and the foreseeability of the "magnitude of the criminal activity of the others." Aplt. Brf. at 6, 7-8. [Mr. Garcia] therefore failed to raise, and thereby preserve for review, the claim that he now brings before this Court for the first time, and this Court may notice [Mr. Garcia]'s new claim, if at all, only under the stringent plain error standard.

Aple's Br. at 16. "Under the plain error standard, [this court] will not review the district court's factual findings relating to sentencing, but will review for particularly egregious or obvious and substantial legal error . . . ." *United States v. Heredia-Cruz*, 328 F.3d 1283, 1288 (10th Cir. 2003) (quoting *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir. 1994)); *see* FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.")

B. Analysis

We hold that Mr. Garcia cannot demonstrate that the district court's sentencing methodology rises to the level of an error that was "particularly egregious" or "obvious and substantial." *Heredia-Cruz*, 328 F.3d at 1288 (internal quotation marks omitted). Furthermore, to the extent Mr. Garcia argues that the district court clearly erred in its determination of drug quantity because it relied on either the testimony of co-conspirators or

because the government did not corroborate the estimates his co-conspirators provided, there is ample evidence in the record to support the reasonableness of the district court's sentence and sentencing procedure. Mr. Garcia concedes that he was responsible for the distribution of 12 kilograms of methamphetamine. As the government points out, Mr. Garcia was a runner for Chago and met with Mr. Skinner more than fifty times to deliver drugs and collect payment for previously delivered drugs. Mr. Skinner paid Chago thousands of dollars for the previously delivered methamphetamine and cocaine. He was involved in frequent and ongoing delivery of large quantities of drugs for the SDO. Because the district court found the testimony of the testifying co-conspirators to be credible, and thus it committed no error when it found Mr. Garcia responsible for 15 kilograms of methamphetamine.

## III. CONCLUSION

Accordingly, because the district court's failure to make particularized findings did not amount to plain error in this case, we AFFIRM Mr. Garcia's sentence.

Entered for the Court,

Robert H. Henry
Chief Circuit Judge