SUTTON, Circuit Judge,
dissenting.
I can think of just one reason why a bank robber would tell a bank teller he has *580 a gun: to show he means business. That is what James Wooten did. On September 23, 2010, Wooten went to the Green Bank in Gordonsville, Tennessee to rob it. The bank teller did not take him seriously when he twice said, “I am going to rob you.” So Wooten upped the ante: “I have a gun. Give me your money.” R. 41 at 5. The teller, no surprise, now took him seriously — and complied. The reason the threat worked, the reason Wooten gave it, is that it conveys an unmistakable message: hand over the money or I will shoot you — point blank with only the upper half of your body as a target. Because this message amounts to a “threat of death,” U.S.S.G. § 2B3.1(b)(2)(F), the district court permissibly applied the two-level sentencing enhancement.
The enhancement applies when the robber “engage[s] in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death.” U.S.S.G. § 2B3.1 cmt. n. 6; United States v. Clark, 294 F.3d 791, 795 (6th Cir.2002). As an illustration, the guideline commentary says that the statement, “Give me the money or I will shoot you,” qualifies as a threat of death. U.S.S.G. § 2B3.1 cmt. n. 6. Wooten, true enough, did not expressly say that. He demanded money and informed the teller he had a gun, leaving the implication “or I will shoot you” unsaid. But what reasonable person would take comfort in the difference between the two statements?
That is all the more true when we remember that the relevant guideline used to require an “express threat of death” to trigger the enhancement and the commentary listed “Give me the money or I will shoot you” as an example of an express threat. United States v. Alexander, 88 F.3d 427, 428 (6th Cir.1996) (emphasis added) (quoting U.S.S.G. § 2B3.1(b)(2)(F) (1994)). The Sentencing Commission deleted “express” from the guideline in 1997 and clarified that “the defendant does not have to state expressly his intent to kill the victim,” all of which establishes that an implied threat will do. U.S.S.G. § 2B3.1 cmt. n. 6. If “Give me the money or I will shoot you” qualifies as an express threat of death, then surely “I have a gun. Give me your money” constitutes an implied threat of death. That is just what happened.
Until today, all of our cases were in alignment on this point. We have applied the threat-of-death enhancement to bank robbers who made threats just like the one Wooten made. In one case, the bank robber passed the teller a note saying, “THIS IS A HOLD-UP I HAVE A GUN 100’s 50’s and 20’s.” United States v. Winbush, 296 F.3d 442, 442 (6th Cir.2002). If the enhancement covered that threat, as we held it did, it surely covers this one, as there is no material difference between the two. In another case, we applied the enhancement to a bank robber who passed the teller a note saying, “I have a gun. Do what you are told and you won’t get hurt.” United States v. Clark, 294 F.3d 791, 795 (6th Cir.2002). The language in each of these notes, we held, would “instill in any reasonable person” a fear of death. Winbush, 296 F.3d at 443; Clark, 294 F.3d at 795. The same is true of other cases. See United States v. Moore, 447 Fed.Appx. 721, 723 (6th Cir.2012) (upholding application of enhancement where bank robber passed teller a note saying, “I have a gun. Give me the cash”); United States v. Sogan, 388 Fed.Appx. 521, 523 (6th Cir.2010) (upholding application of enhancement where defendant told tellers to “give me your money” and placed his hand on his waist, implying he had a gun). If these cases were correctly decided, I do not understand how this one could be.
Shift the focus to the other circuits in the country, and you will not find a single *581 dance partner for today’s decision. Until today, every bank robber who appealed a threat-of-death enhancement after saying “I have a gun” (or words to that effect) has lost under the current version of the guideline.
Here are the published cases. See United States v. Gray, 177 F.3d 86, 88 (1st Cir.1999) (“I got a gun. Give me all the money and no one will get hurt.” “Give me your money or I’ll start shooting.”); United States v. Burns, 160 F.3d 82, 83 (1st Cir.1998) (“I have a gun! Don’t make me use it.”); United States v. Jennette, 295 F.3d 290, 291 (2d Cir.2002) (“I have a gun.”); United States v. Day, 272 F.3d 216, 217 (3d Cir.2001) (“Put some money on the counter. No dye packs. I have a gun.”); United States v. Figueroa, 105 F.3d 874, 876 (3d Cir.1997) (“I have a gun. Give me all the money.”); United States v. Franks, 183 F.3d 335, 336 (4th Cir.1999) (“No dye packs. I have a gun. I have nothing to lose.”); United States v. Soto-Martinez, 317 F.3d 477, 478 (5th Cir.2003) (“I have a gun. I just want money. Start with the $100.00. Stay Quiet!!!”); United States v. White, 639 F.3d 331, 334 (7th Cir.2011) (“I have a gun. Give me the money in the register. No dye packs, no silent alarms, and no one will get hurt. Do it quickly.”); United States v. Dortch, 628 F.3d 923, 924 (7th Cir.2010) (“I have a gun. Please give me the money out of your drawers. No dye pack. I will be forced to do anything that gets in my way. Nod your head if you understand. You have 30 seconds. Don’t push alarm or else.”); United States v. Gibson, 155 F.3d 844, 845 (7th Cir.1998) (“This is a robbery. Give me all your money. No funny stuff. I have a gun.”); United States v. Carbaugh, 141 F.3d 791, 792 (7th Cir.1998) (“This is a robbery. Put the money in the bag. I have a gun.”); United States v. Jones, 83 F.3d 927, 928 (7th Cir.1996) (“[Do] not pull any alarms, because if you do, I have a gun and I’ll use it.”); United States v. Hunn, 24 F.3d 994, 995 (7th Cir.1994) (“This is a robbery, I have a gun, give me your money, don’t try anything foolish.” “This is a hold-up. I have a gun.”); United States v. Robinson, 20 F.3d 270, 276 (7th Cir.1994) (“I have a gun and am not afraid to use it.” “This is a stickup. I have a gun.”); United States v. Cadotte, 57 F.3d 661, 661-62 (8th Cir.1995) (robber said “This is a robbery,” and told the teller he had a gun and “no one will get hurt” if she gave him the money); United States v. Jennings, 439 F.3d 604, 605 (9th Cir.2006) (“Put all your money on top of the counter. I have a gun. Just do it now.”); United States v. Ellis, 525 F.3d 960, 964 (10th Cir.2008) (“I have a gun and I want you to give me all of your large bills or I’ll use it!! Place all of it in the bag. From all registers.”); United States v. Arevalo, 242 F.3d 925, 928 (10th Cir.2001) (“I have a gun and am willing to use it.”); United States v. Murphy, 306 F.3d 1087, 1089 (11th Cir.2002) (“You have ten seconds to hand me all the money in your top drawer. I have a gun. Give me the note back now.”).
Here is a representative sample of the unpublished cases. See, e.g., United States v. Hayes, 142 Fed.Appx. 476, 478 (1st Cir. 2005) (“I have a gun.”); United States v. Baynes, 369 Fed.Appx. 365, 367-68 (3d Cir.2010) (“[N]o dye pack, no tracker, 20’s, 50’s and 100’s or I’m going to pull this [gun].”); United States v. Watson, 257 Fed.Appx. 556, 558 (3d Cir.2007) (“I HAVE A GUN GIVE ME THE MONEY NOW!”); United States v. Evans, 144 Fed. Appx. 319, 320 (4th Cir.2005) (“I have a gun. Don’t make a sound, no die pack. Put the money on the counter. $100, $50, $20 packs. No alarm.”); United States v. Barkley, 100 Fed.Appx. 899, 900 (4th Cir. 2004) (“Don’t do anything funny or I will shoot you.” “Don’t make me use my gun.”); United States v. Martin, 47 Fed. *582 Appx. 218, 219 (4th Cir.2002) (“I have a gun. Put all your money in the envelope.” “This is a robbery. I have a gun.”); United States v. Crawford, No. 00-4275, 2000 WL 1268783, at *1 (4th Cir. Sept. 7, 2000) (defendant passed teller “a note on which he wrote that he had a gun”); United States v. Whitener, No. 99-4003, 1999 WL 519175, at *1 (4th Cir. July 22, 1999) (“I have a gun this is a holdup!! Place $1200 (Twelve Hundred Dollars) in this envelope now and no one else gets hurt LARGE BILLS PLEASE.”); United States v. Hass, No. 99-2750, 1999 WL 1136836, at *1 (7th Cir. Dec. 8, 1999) (“I have a gun. Don’t try anything tricky.”); United States v. Ward, 56 Fed.Appx. 759, 759 (8th Cir. 2003) (“Don’t say a word. I have a gun. No joke.”); United States v. Pinney, No. 00-1656, 2000 WL 1694062, at *1 (8th Cir. Nov. 14, 2000) (“I have a gun. I don’t want to use it. Just give me your money. Thanks.”); United States v. Dawson, 220 Fed.Appx. 466, 467 (9th Cir.2007) (defendant “told the bank teller he had a gun”); United States v. O’Neil, 249 Fed.Appx. 497, 497 (9th Cir.2007) (“I have a gun.”); United States v. Pastor, 177 Fed.Appx. 565, 566 (9th Cir.2006) (“I have a gun. No dye packs. No tricks.”); United States v. Barrientos, 13 Fed.Appx. 551, 552 (9th Cir.2001) (“Give me all your money. I have a gun.”); United States v. Kaimana, 13 Fed.Appx. 733, 733 (9th Cir.2001) (“I got a gun give me all the money.”); United States v. Witt, No. 99-30299, 2000 WL 553907, at *1 (9th Cir. May 4, 2000) (“This is a robbery I have a gun give me all the money and I won’t shoot.”); United States v. Quammen, No. 99-10060, 1999 WL 439026, at *1 (9th Cir. June 16, 1999) (“I am armed! Quickly, all the money!”); United States v. Campbell, 139 Fed.Appx. 920, 922 (10th Cir.2005) (“Put unbundled 100s and 50s in an envelope, no dye pack, no alarm. I have a gun.”); United States v. Yoho, 147 Fed.Appx. 794, 795 (10th Cir. 2005) (“Give me all of the 100s and 50s. I have a gun.”); United States v. Ross, 27 Fed.Appx. 989, 990 (10th Cir.2001) (“I have a gun in this bag, give me all of your money and do it fast.”); United States v. Zackary, 427 Fed.Appx. 850, 851 (11th Cir. 2011) (“I have a gun.”); United States v. Perez, 350 Fed.Appx. 425, 428 (11th Cir. 2009) (“I have a gun and will use it if something goes wrong.”); United States v. Pruitt, 344 Fed.Appx. 532, 536 (11th Cir. 2009) (“There [are] 2 sets of eyes on you ...”; “We are watching and listening”; “Cooperate or boom and bang!”); United States v. Earnest, 151 Fed.Appx. 842, 843 (11th Cir.2005) (“I have a gun, do not alert anyone, give me all the money from the drawer now.”); United States v. Szabo, 143 Fed.Appx. 287, 287 (11th Cir.2005) (“I have a gun.”); United States v. Cliff, 138 Fed.Appx. 246, 247 (11th Cir.2005) (“This is a robbery. Give me the Cash, I’ve got a gun.”).
Best I can tell, no case from any circuit, published or unpublished, has reversed a threat-of-death enhancement applied to a bank robber who told the teller he had a gun under the current version of the guideline. What if anything makes James Wooten’s case so unusual? What distinguishes his conduct from the legions of bank robbers who made similar threats and received a threat-of-death enhancement?
Three things, says the majority. First, “the robbery did not contain any hallmarks of experienced bank robbers, such as demand notes” or a “mask or disguise.” But the source of the idea that “experienced bank robbers” use demand notes and masks and the rest are less-dangerous neophytes is a mystery. John Dillinger did not use demand notes or wear a mask. See Dary Materia, John Dillinger: The Life and Death of America’s First Celebrity Criminal 47 (2004). Neither did Bonnie *583 Parker or Clyde Barrow. See E.R. Milner, The Lives and Times of Bonnie and Clyde 114-15 (1996). While Willie Sutton (no relation) sometimes wore disguises— dressing up as a policeman, as a postman, even as a window cleaner — he apparently did not use demand notes. See Gangsters, Swindlers, Killers, and Thieves: The Lives and Crimes of Fifty American Villains 218 (Lawrence Block, ed., 2004). Yet these bank robbers all qualified as experienced — and dangerous.
Second, Wooten exhibited a “nonaggressive demeanor” during the robbery, “approaching] the tellers calmly, placing] both hands in a visible position on the counter, and softly sa[ying] that he was engaged in robbery.” So what. Not all bank robbers scream and yell, drawing attention to themselves in the process. That was not Willie Sutton’s style. See id. And not all people who speak softly are unarmed and unwilling, as one of our Presidents liked to imply. Keeping a low profile at all events is not a bad idea if the robber wishes to make a successful escape.
Nor, it seems to me, is the demeanor of people who threaten others by saying “I have a gun” usually relevant to this kind of crime or any other. If a passenger on an airplane says, “I have a gun. Let me into the cockpit,” should an air marshal stop and consider the prospective terrorist’s demeanor, tone of voice and hand placement before taking action? WTiat about a student who says “I have a gun” in school? Should the principal undertake the same detailed analysis before calling the police? In bank robberies, as in other settings, the threat “I have a gun” is more than enough to prompt people to act out of reasonable fear for their lives and the lives of others.
Third, the bank teller testified that he did not feel threatened by Wooten. Supra at 579. This is the least relevant, and the most dangerous, of rationales. The relevant inquiry is an objective one: Would the robber’s conduct instill a fear of death in a “reasonable person”? U.S.S.G. § 2B3.1 cmt. n. 6; Clark, 294 F.3d at 795. The point of an objective inquiry is to make a subjective one beside the point. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct 1769, 135 L.Ed.2d 89 (1996). The question is what the defendant did, not how a range of victims — meek, brazen, indifferent — reacted to what he did. One teller might faint in response to an I-have-a-gun bank robbery and another might respond by saying “Make my day.” The guideline requires an enhancement in both settings, not one of them. Even if subjective impressions somehow mattered, it surely should be the job of the district judge, who saw the teller testify about the encounter, to assess the impact of the testimony, not us, who have only a cold transcript to work with. See United States v. Poynter, 495 F.3d 349, 351-52 (6th Cir. 2007). Notably, every one of the majority’s citations on this point — not one of which concerns the threat-of-death enhancement — involves subjective impressions that supported the fact-finder’s decision.
This inquiry also is a perilous one. Do we really want to make the testimony of victims of crime relevant to questions about whether the conduct of criminal defendants would objectively instill fear? I have a strong suspicion that this inquiry will do far more harm than good to defendants seeking even-handed and fair-minded sentencing hearings in the future. What of the robber who demands money but does not say he has a gun? Could a bank teller nonetheless testify, not implausibly, that she saw her life pass before her eyes during the robbery? Could a sentencing court rely on this testimony in applying the enhancement? I think not, and I hope not. But the majority’s deci *584 sion, denying the enhancement based on fearless-teller testimony, surely permits just such a sentencing increase, granting the enhancement based on terrified-teller testimony. Both enhancements are permitted or neither is.
I do not doubt that there are some cases where the objective contextual factors surrounding the threat detract from a reasonable fear of death. A would-be robber who says he has a gun but brandishes “a banana,” supra at 576, or wields “what [is] quite obviously a toy,” United States v. Jennings, 439 F.3d 604, 611 (9th Cir.2006), will not warrant the enhancement. See United States v. Gibson, 155 F.3d 844, 847 (7th Cir.1998). But no circuit has seen such a case, and there is a good reason why: No self-respecting prosecutor would ask for such an enhancement.
In the final analysis, I see nothing in Wooten’s actions that distinguishes this case from our prior published decisions, Winbush, 296 F.3d at 443; Clark, 294 F.3d at 795, or for that matter from the legion of decisions from other circuits upholding application of the enhancement based on similar threats. The majority seeing things differently, I respectfully dissent.