[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13552
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:09-cr-00280-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES ZACKARY, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 31, 2011)

Before EDMONDSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

James Zackary, III, appeals his 151-month sentence for bank robbery, 18 U.S.C. § 2113(a). On appeal, Zackary argues that the district court erred by applying a two-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for making a threat of death. He also contends that his sentence is substantively unreasonable, particularly in light of the fact that his codefendant, Frederick Lightfoot, only received a 43-month sentence. For the reasons stated below, we affirm.

I.

Zackary and Lightfoot pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a). According to the presentence investigation report ("PSI"), on June 3, 2009, Lightfoot and Zackary arrived at a Bank of America branch on San Marco Boulevard in Jacksonville, Florida. Lightfoot entered the bank first, spoke with one of the tellers about opening an account, and then left the bank. One hour later, Zackary entered the bank and gave a note to one of tellers that read, "I have a gun." Zackary placed a white trash bag and yellow tie straps on the counter, and instructed the teller to provide him with $50 and $100 bills. Zackary told the teller that she was making him mad and made a motion toward his waistband as though he were reaching for a gun. The bank teller gave Zackary

2

$3,005 in currency. Zackary then fled the bank and got into a car being driven by Lightfoot.

The PSI included the following information concerning Zackary's criminal history. In October 2003, Zackary robbed a grocery store in Dayton, Ohio. During the robbery, Zackary threatened to shoot the store owner. He fled the scene with approximately $150 in currency. In January 2004, Zackary and a codefendant robbed a wine store in Montgomery County, Ohio. Zackary brandished a semi-automatic firearm, threatened multiple employees, and stole $1,471 in cash. After he was apprehended, Zackary pled guilty to two counts of aggravated robbery, and received concurrent five-year sentences. He was released from state custody on May 2, 2009, one month before he committed the present offense.

The PSI determined that Zackary had a base offense level of 20 under U.S.S.G. § 2B3.1(a). The PSI enhanced Zackary's base offense level by two because he had taken the property of a financial institution. The PSI also applied a two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F) because Zackary had made a threat of death in connection with the robbery. Specifically, the PSI noted that Zackary had passed a note to the teller stating, "I have a gun," and made a motion towards his waistband as though he were reaching for a gun. Zackary

3

received a 3-level reduction for acceptance of responsibility, giving him a total offense level of 21. Zackary had a criminal history category of III, and thus his guideline range was 46 to 57 months' imprisonment. Zackary objected to the PSI's imposition of a threat-of-death enhancement.

The district court held separate sentencing hearings for Lightfoot and Zackary. At Lightfoot's sentencing hearing, the government moved for a one-level downward departure based on Lightfoot's substantial assistance. After the district court granted the motion, Lightfoot had a base offense level of 18, a criminal history category of V, and a guideline range of 51 to 63 months' imprisonment.

With respect to the 18 U.S.C. § 3553(a) factors, Lightfoot's defense counsel explained that Lightfoot had serious mental health issues as a result of his troubled upbringing. At the time of the robbery, Lightfoot was suffering from depression and schizophrenia. He was experiencing problems in personal life, and recently had been laid off from his job as a construction worker. Lightfoot's counsel explained that Zackary came up with the idea to rob the bank, and that Lightfoot's role was limited to casing out the bank and waiting outside in the car while the robbery was occurring. Lightfoot's counsel requested a sentence of 24 months.

In response, the government acknowledged that Lightfoot played a lesser role in the offense and that Lightfoot's personal history was a tragic one. Nevertheless, the government contended that a 54-month sentence was needed to reflect Lightfoot's serious criminal history and to deter him from committing future crimes. The government informed the court that it would be requesting a significantly longer sentence in Zackary's case.

The district court observed that troubled upbringing and mental health issues had a profound impact on his behavior. The court noted that the offense of conviction, bank robbery, was a serious one, but the court also recognized that Lightfoot played a lesser role in the robbery than Zackary. The district court sentenced Lightfoot to a term of 43 months' imprisonment.

At Zackary's sentencing hearing, the district court began by considering Zackary's objection to the two-level enhancement for making a threat of death. The bank teller, Patricia Tharpe, testified that Zackary passed her a note that read "I had a gun," and demanded that she give him $50 and $100 bills. When she responded that she did not have bills in those denominations, Zackary told her that she was making him mad, and he made a movement towards his waistband as though he were reaching for a gun.

Tharpe explained that the robbery had a significant effect on her work performance. For several months, she only could work at the drive-up window because she could not cope with standing at the teller counter and interacting with customers. She became "unnerved" whenever a customer would walk into the bank wearing a bulky coat because she knew that robbers sometimes hide weapons in their coats. After hearing Tharpe's testimony, the district court viewed surveillance videos of the movement that Zackary had made towards his waistband.

The district court credited Tharpe's testimony that Zackary's note stated, "I had a gun." The court also believed that Zackary was simulating an effort to produce a firearm when he reached back toward his waistband. The court observed that a threat-of-death enhancement is appropriate in a case where a defendant states that he has a firearm. Accordingly, the district court overruled Zackary's objection to the two-level enhancement for making a threat of death.

The district court then heard arguments concerning the § 3553(a) factors. The government argued that the district court should impose a substantial upward variance based on the seriousness of the offense and Zackary's prior history of committing robberies. In response, Zackary's defense counsel argued that a

sentence within the guideline range would adequately reflect Zackary's criminal history.

The district court acknowledged that it had considered the § 3553(a) factors. With respect to the nature and circumstances of the offense, the court observed that this case involved a "fairly brazen" bank robbery. The court noted that Zackary attempted to convince the bank teller that he did have a weapon and put her in fear for her life. Concerning Zackary's personal history and characteristics, the court observed that Zackary appeared to be an articulate and intelligent man and that his family described him as a good person and a good father. However, the court noted that Zackary's criminal history painted a markedly different picture. The court pointed out that Zackary had committed two previous robberies, both of which had involved threats and at least one of which had involved a firearm. The court also observed that Zackary's previous five-year term of imprisonment had failed to deter him from committing robberies, and that he committed the present robbery just one month after his release from custody. In light of all these considerations, the court agreed with the government that a substantial variance from the guideline range was warranted. Accordingly, the district court sentenced Zackary to a term of 151 months' imprisonment.

II.

7

"We review a district court's application and interpretation of the sentencing guidelines de novo." *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002). Under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

The guideline applicable to robbery offenses provides for a two-level enhancement if the defendant made a threat of death during the course of the robbery. U.S.S.G. § 2B3.1(b)(2)(F). The guideline commentary explains that the enhancement can be applied even if the threat is not stated expressly. *Id.,* comment. (n.6). The test is whether "the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *Id.* In *Murphy*, the defendant passed a note to a bank teller that stated, "You have ten seconds to hand me all the money in your top drawer. I have a gun. Give me the note back now." 306 F.3d at 1089. We upheld the district court's application of a threat-of-death enhancement because the note that Murphy passed to the bank teller would put a reasonable person in fear of death. *Id.*

Although Zackary suggests that *Murphy* should be overruled, we are bound to follow that decision under our prior panel precedent rule. *See Archer*, 531 F.3d

8

at 1352. The holding of *Murphy* controls this case. The district court found that Zackary passed the bank teller a note that stated, "I had a gun," and that Zackary also made a movement towards his waistband as though he were reaching for a gun. Because Zackary's actions would put a reasonable person in fear for his or her life, the district court appropriately applied a threat-of-death enhancement. *See Murphy*, 306 F.3d at 1089.

## III.

We review a sentence imposed by a district court for reasonableness, using an abuse-of-discretion standard. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009). The abuse-of-discretion standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (quotation omitted), *petition for cert. filed*, (U.S. Nov. 24, 2010) (No. 10-727). We follow a two-step process in reviewing a sentence. First, we must ensure that the district court did not commit a significant procedural error. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). If the district court's sentencing decision is procedurally sound, we must then determine

9

whether the sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors. *Id.*

We will not reverse a sentence as substantively unreasonable unless we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation omitted). The party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). In determining whether a variance from the guideline range is reasonable, we must examine whether "the justification for the variance [is] 'sufficiently compelling to support the degree of the variance.'" *Irey*, 612 F.3d at 1186-87 (quoting *Gall*, 552 U.S. at 50, 128 S.Ct. at 597). The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guideline range; (8) pertinent policy

statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

A sentence can be substantively unreasonable if it fails to reflect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). To establish that a sentencing disparity exists, the defendant must show that he is similarly situated to other defendants who have received lower sentences. *See United States v. Docampo*, 573 F.3d 1091, 1101-03 (11th Cir. 2009) (holding that there was no unwarranted sentencing disparity where two defendants were not similarly situated), *cert. denied*, 130 S.Ct. 2342 (2010).

In this case, the district court imposed a substantial upward variance. Zackary's 151-month sentence is over 3 times greater than the low end of his advisory guideline range, 46 months. Nevertheless, several of the § 3553(a) factors supported the imposition of a lengthy sentence in this case.

First, as noted by the district court, the offense of conviction, bank robbery, was a serious one. *See* 18 U.S.C. § 3553(a)(1). Zackary put the bank teller in fear for her life by passing her a note stating that he had a gun, and by making a threatening gesture towards his waistband as though he were reaching for a gun.

Although Zackary's threatening behavior already was taken into account by the two-level threat-of-death enhancement, the district court also could consider those facts in determining whether to impose an upward variance. *See United States v. Rodriguez*, No. 09-15265, slip op. at 456 (11th Cir. Dec. 27, 2010) (explaining that a district court may rely on factors that already have been taken into account in a defendant's guideline range in deciding whether to impose a variance); *see also United States v. Amedeo*, 487 F.3d 823, 828, 833-34 (11th Cir. 2007) (concluding that it was reasonable for the district court to impose an above-guideline sentence based on facts already taken into account by the defendant's guideline range).

Zackary's criminal history also supported a sentence above the guideline range. Zackary had two prior convictions for aggravated robbery. Both of the robberies involved threats, and at least one of the robberies involved a firearm. Zackary robbed the Bank of America approximately one month after completing his term of imprisonment for those earlier robberies. Therefore, it was reasonable for the district court to conclude that an upward variance was needed to reflect Zackary's history and characteristics. *See* 18 U.S.C. § 3553(a)(1).

Also, because Zackary's earlier 5-year sentence did not dissuade him from continuing to commit robberies, the district court appropriately determined that a

12

sentence above the guideline range of 46 to 57 months was needed to promote respect for the law and to protect the public from further crimes committed by Zackary. *See* 18 U.S.C. § 3553(a)(2)(A), (C). Zackary's 151-month sentence has the effect of deterring others from committing the offense of bank robbery. *See* 18 U.S.C. § 3553(a)(2)(B). It is also notable that Zackary's sentence is well below the 20-year statutory maximum applicable to his offense. *See* 18 U.S.C. § 2113(a); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (concluding that defendant's sentence was reasonable because, among other things, it was well below the statutory maximum).

Zackary's sentence is substantially greater than the 43-month sentence received by his codefendant Lightfoot, but there were significant differences between Zackary and Lightfoot. First, Zackary played a more serious role in the robbery than Lightfoot. Lightfoot's involvement was limited to casing out the bank an hour before the robbery and being the getaway driver. By contrast, Zackary actually carried out the robbery and threatened the bank teller, making her believe that he had a gun. Because Zackary's offense conduct was more egregious, it was appropriate for the district court to impose a more serious sentence in his case.

In addition, the district court imposed a lower sentence in Lightfoot's case because Lightfoot had a history of mental health problems and was suffering from depression and schizophrenia at the time of the robbery. By contrast, Zackary had never received treatment for mental or emotional problems. Because Lightfoot and Zackary were not similarly situated in terms of their personal histories or their involvement in the offense, the district court did not commit a clear error of judgment by sentencing Zackary to a much longer term of imprisonment than it imposed in Lightfoot's case.

In conclusion, the district court did not abuse its discretion in sentencing Zackary to a term of 151 months' imprisonment. Although Zackary's sentence is a substantial upward variance from his guideline range, it did not fall outside the "range of reasonable sentences" from which the district court was permitted to choose. *Irey*, 612 F.3d at 1190. Accordingly, we affirm.

**AFFIRMED**.