RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 11-5348

JAMES WOOTEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cr-266-001—Todd J. Campbell, Chief District Judge.

Argued: March 8, 2012

Decided and Filed: August 20, 2012

Before: MOORE, SUTTON, and DONALD, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Christopher C. Sabis, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Braden H. Boucek, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court, in which DONALD, J., joined. SUTTON, J. (pp. 13–19), delivered a separate dissenting opinion.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge. On September 23, 2010, Defendant-Appellant James Wooten robbed the Green Bank in Gordonsville, Tennessee. During the robbery, Wooten casually approached a teller, placed his hands on the counter, and

1

twice quietly stated, "I am going to rob you." R. 41 (Sentencing Hr'g Tr. at 5). At first, Wooten's demeanor left the teller with doubts as to the sincerity of Wooten's demand. When the teller was slow to respond, Wooten finally said, "I have a gun. Give me your money," at which point, the teller handed over approximately \$4,130 in cash. *Id.*; Presentence Investigation Report ("PSR") ¶ 5, at 4.

Wooten pleaded guilty to one count of bank robbery under 18 U.S.C. § 2113(a). Based on Wooten's declaration that he had a gun, the district court imposed a two-level sentencing enhancement pursuant to United States Sentencing Guideline ("Guideline" or "U.S.S.G.") § 2B3.1(b)(2)(F) for making a threat of death. Wooten challenges the enhancement and maintains that, in spite of his use of the phrase "I have a gun," his conduct and demeanor were so nonthreatening as to eliminate the possibility that any reasonable teller under the circumstances would have believed his or her life to be in danger. Under the specific circumstances of this case, we agree. Accordingly, we **REVERSE** the district court's imposition of the sentencing enhancement, **VACATE** Wooten's sentence, and **REMAND** the case for resentencing in accordance with this opinion.

## I. BACKGROUND

At Wooten's sentencing hearing, bank teller Buddy Mason recalled the circumstances of the September 23 robbery. According to Mason, the robbery began after Wooten walked "casually" into the bank and approached the teller row. R. 41 (Sentencing Hr'g Tr. at 5). Wooten, who was fifty-six years old at the time, wore ordinary clothing and appeared to Mason to be a routine customer. After entering, Wooten strolled over and placed one hand on the counter. According to Mason, Wooten was "not looking around or fidgeting or looking at anything" and his demeanor was "nonchalant." *Id.* After motioning for Mason to lean in closer, Wooten "kind of whispered and said, I am going to rob you." *Id.* at 5. Mason at first thought Wooten was "joking around." *Id.* at 11. Indeed, Mason recalled that he was "not taking [the robbery] very seriously because [Wooten] was just so nonthreatening." *Id.* at 9. With prompting from Mason, Wooten repeated the statement "I am going to rob you," and Mason again

questioned the sincerity of Wooten's request. *Id.* at 5. At that point, Wooten "kind of got a serious look in his face" and said, "I have a gun, I want your money." *Id.*[1]

Mason testified that the bank had instructed all employees to give money to a bank robber without asking any further questions. Consequently, because at that point he believed Wooten's demand to be real, Mason turned his back to Wooten, obtained a bundle of bills, and handed them over. By that time, Wooten had both hands on the counter, leading Mason to believe that Wooten had no intention of reaching for anything. According to Mason, Wooten "was not acting like he was going to hurt me or anybody in the bank." In fact, even though Wooten had told Mason that he had a gun, Mason said he "never felt threatened at all." *Id.* at 10.

After obtaining the money, Wooten exited the bank and drove slowly away. Police stopped him only a few minutes later. Wooten later told investigators that he actually wanted to be caught and that he committed the robbery because "he was just tired of living in his car and he was running out of money." PSR ¶ 7, at 5. The record also reflects that Wooten had attempted a similar bank robbery shortly before this one, but left empty handed after the teller at the other bank laughed at him.

Based on these facts, the district court applied the threat-of-death enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F). Initially, the district court emphasized that the relevant standard is an objective one, "[s]o whether or not Mr. Mason was actually in fear is not outcome determinative because that would be a subjective standard." R. 41 (Sentencing Hr'g Tr. at 25). The district court indicated, however, that "whether Mr.

---

[1]There was some debate at the sentencing hearing concerning whether Wooten said "I have a gun" or "I have a weapon." The teller reported the latter statement in an FBI interview shortly after the robbery, and repeated it in an affidavit filed with the district court. Citing employee training that advocated use of the word "weapon" rather than "gun," and his recent review of the *silent* surveillance video, which purportedly jogged his memory, Mason testified at sentencing that Wooten instead said "I have a gun." R. 41 (Sentencing Hr'g Tr. at 14, 16). The district court found Mason's later testimony credible in spite of its inconsistency with Mason's statements in the FBI interview and affidavit. The district court therefore made a factual finding that the government had proved by the requisite preponderance of the evidence that Wooten said "gun" rather than "weapon." Although Wooten argues otherwise, we do not believe this finding constituted clear error. The "clearly erroneous" standard is deferential, and factual findings derived from credibility determinations are entitled to particular deference in our court. *Satterlee v. Wolfenbarger*, 453 F.3d 362, 367 (6th Cir. 2006), *cert. denied*, 549 U.S. 1281 (2007). Where, as here, "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 366–67 (internal quotation marks omitted). We therefore adopt the district court's findings on this issue.

Mason was in fear or not certainly is a set of facts that the Court should consider in determining what a reasonable person would believe." *Id.* The district court therefore concluded that "Mason's fear or lack of fear is an important fact to consider in determining what is reasonable, but it is not controlling." *Id.*

Nonetheless, after recounting Mason's testimony that Wooten's demeanor was "nonchalant" and that he "never felt threatened [and] thought [Wooten] was joking," the district court determined that the statement "I have a gun" was enough to constitute a threat of death. *Id.* at 26. Although the district court did not believe that the same would have been true for the statement "I have a weapon," it reasoned that "to say I have a gun implies I will use it and implies I will shoot you and implies that if you are shot, you may die and that that is a threat of death." *Id.* Accordingly, the district court concluded, "the statement of someone robbing a bank that I have a gun in the overall context of the facts in this case would cause a reasonable person who is a victim of the offense to fear death." *Id.*

The two-level enhancement resulted in a Guidelines range of 37 to 46 months of imprisonment. In considering the 18 U.S.C. § 3553(a) factors, the district court found Wooten's history and characteristics to be "largely mitigating," noting Wooten's military history, mental-health issues, difficult living circumstances, and nonexistent criminal record. *Id.* at 33. Although reiterating the seriousness of a bank robbery offense, the district court noted that "this is Mr. Wooten's first offense, and he seems remorseful." *Id.* The district court therefore imposed a thirty-seven month prison sentence—the bottom of the Guidelines range—and two years of supervised release. On appeal, Wooten challenges only the district court's application of the threat-of-death enhancement pursuant to § 2B3.1(b)(2)(F).

## II. ANALYSIS

We review de novo the district court's application of the Sentencing Guidelines to a particular set of facts, including whether the facts as found warrant the sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F). *United States v. Winbush*, 296 F.3d 442,

443 (6th Cir. 2002); *see also United States v. McCarty*, 628 F.3d 284, 289 (6th Cir. 2010).

Section 2B3.1(b)(2)(F) instructs that "if a threat of death was made, increase [the offense level] by 2 levels." To convey a threat of death, an offender must "engage[] in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *Id.* cmt. n.6. By way of example, the Guidelines provide the following nonexhaustive list of potential death threats:

> oral or written demand[s] using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead."

*Id.* As these statements make clear, the threat of death need not be explicit. *Id.* Nevertheless, the robber's communication must be sufficient to permit a reasonable bank teller to fear that death is at least a reasonably likely result of his or her noncooperation.

Although the statement "I have a gun" lacks the type of "or else" condition present in the examples set out above, our cases have determined that the phrase can be sufficient on its own to warrant the threat-of-death enhancement. *Winbush*, 296 F.3d 442, 443 (6th Cir. 2002). In *United States v. Winbush*, for example, we upheld a district court's application of the enhancement after a bank robber presented a demand note that read "THIS IS A HOLD–UP I HAVE A GUN 100's 50's and 20's," but did not make any oral statements or show the gun during the robbery. *Id.* at 442. We made a similar determination in *United States v. Clark*, 294 F.3d 791, 795 (6th Cir. 2002), which involved a demand note that read "I have a gun. Do what you are told and you wont [sic] get hurt." There, we found that "[r]eading the two phrases of the note together, the clear implication of the message is that failure to cooperate would result in being shot then and there by a gun. This would instill in any reasonable person, such as the teller in this case, a fear of death." *Id.* Finally, relying on *Winbush*, we recently stated in *United States v. Moore*, 447 F. App'x 721, 723 (6th Cir. 2012) (unpublished opinion), that "advising a bank employee that one is armed suffices to support the enhancement." Thus, we have clearly established that the statement "I have a gun" can constitute a

threat of death for purposes of the § 2B3.1(b)(2)(F) enhancement.  Other circuits are in accordance with this general proposition.  *See, e.g.*, *United States v. Martinez*, 602 F.3d 1156, 1159 (10th Cir. 2010); *United States v. Jennings*, 439 F.3d 604, 611 (9th Cir. 2006); *United States v. Murphy*, 306 F.3d 1087, 1090 (11th Cir. 2002); *United States v. Jennette*, 295 F.3d 290, 292–93 (2d Cir.), *cert. denied*, 537 U.S. 1076 (2002); *United States v. Gibson*, 155 F.3d 844, 845 (7th Cir. 1998).[2]

The government argues that these cases—and particularly *Winbush*—dictate the outcome here.  *Winbush*, however, did not establish a per se rule that the statement "I have a gun" always constitutes a threat of death.  Instead, *Winbush* stands only for the proposition that, in the absence of mitigating circumstances that erode the typical and expected impact of a bank robber's announcement that he has a gun, the phrase "I have a gun," without more, supports the threat-of-death enhancement.  In other words, in cases presenting no facts to suggest that the context and circumstances of the robbery dulled the threatening implication of the words "I have a gun," *Winbush* is the end of the analysis.  On the other hand, where potentially mitigating factors are present, the court must go a step further and evaluate the overall circumstances of the robbery to determine whether a reasonable teller in that particular scenario would have perceived a threat of death.  Thus, while the statement "I have a gun" certainly *can* be enough to support the threat-of-death enhancement—and in the majority of cases it is—the statement is not *necessarily* enough, especially when contextual circumstances undermine the otherwise threatening nature of the declaration.

Our interpretation is fully consistent with the plain language of the Sentencing Guidelines, which require some analysis of a reasonable victim's perception of the situation—namely, whether the offender's overall conduct "would instill in a reasonable

---

[2]In light of these precedents, we clearly do not dispute the dissent's observation that § 2B3.1(b)(2)(F) applies equally to both express and implied threats of death.  To the contrary, we fully agree that, at least in the majority of cases, a bank robber's use of the phrase "I have a gun" is alone enough to convey an implicit threat of death that supports the enhancement.  As discussed below, it is only when we are presented with other case-specific contextual factors that this conclusion may vary.  Given that none of our prior cases presented any such factors, those cases do not proscribe the distinction we make today for scenarios that present both an implied threat and mitigating contextual factors in the same case.

person, who is a victim of the offense, a fear of death." U.S.S.G. § 2B3.1(b)(2)(F) cmt. n.6. Thus, the sole focus is not the defendant's choice of words. Instead, as the Third Circuit stated, "In determining whether a threat is a 'threat of death,' the focus is on the reasonable response of the victim of the threat." *United States v. Thomas*, 327 F.3d 253, 255 (3d Cir.), *cert. denied*, 540 U.S. 974 (2003). That inquiry is one that involves "sensitivity to fact and context," *Gibson*, 155 F.3d at 847, and requires a court to consider the overall circumstances in which the statement occurred, *Jennings*, 439 F.3d at 611.

Although unusual, one can envision circumstances in which the nature of a robbery makes it objectively unreasonable for a victim of ordinary intelligence to believe that the robber, even if claiming to have a gun, has any intent or ability to carry out a violent act. An offender who walks into a bank waving a banana or what is plainly a toy gun, for instance, would not instill a fear of death in a reasonable person, even if the offender emphatically announced his possession of a gun. *Cf. Jennings*, 439 F.3d at 611 (surmising "that there could be circumstances that would sufficiently dilute the phrase 'I have a gun' so that it would not qualify as a death threat," such as where "a bank robber claimed to have a gun but brandished what was quite obviously a toy"); *Gibson*, 155 F.3d at 847 (stating that "I have a gun," constitutes a threat of death unless "unusual mitigating circumstances accompanying this statement could deprive the words of their ordinary and expected meaning" (internal quotation marks omitted)). Because such circumstances would fall short of instilling a fear of death in a reasonable victim of the offense, the threat-of-death enhancement would not be warranted.[3]

The question that next arises relates to the types of contextual factors that may be taken into account when determining the likely reaction of such a reasonable victim.

---

[3]Not one of the cases cited by our dissenting colleague as contrary to our holding contains evidence of the type of extenuating facts that we encounter here. Instead, each would have been easily resolvable using the more limited analysis in *Winbush*, and thus, even under our reasoning today, none of the cited cases would have commanded a different result. Our holding is a narrow one, and it is based entirely on the unique factual circumstances presented in this case. We express no disagreement with the established law in either this circuit or our sister circuits. Instead, we merely conclude that this case qualifies as one of the rare instances in which the overall context of the robbery prevents the case from fitting the standard § 2B3.1(b)(2)(F) mold.

This evaluation is clearly an objective one. *United States v. Sogan*, 388 F. App'x 521, 524 (6th Cir. 2010) (unpublished opinion). Thus, facts such as the robber's statements, body language and overall demeanor, tone of voice, and mode of communication are all relevant to the analysis. Moreover, despite the government's argument to the contrary, we believe that a teller's reasonable perceptions of an incident also play a role in the objective evaluation of whether a reasonable teller in that specific teller's shoes would have experienced a fear of death. *Cf. id.* (discussing two bank tellers' personal interpretations of the defendant's statements and expressions of fear when analyzing whether the defendant's conduct objectively amounted to a threat of death). As the district court appropriately recognized, an individual teller's impression of the events in question is a relevant consideration for a court trying to determine whether the proverbial "reasonable person" would have been fearful under the same circumstances. Although the presence or absence of the teller's fear is by no means the *only* factor to be considered—indeed, it cannot be dispositive or even the focus of the analysis—when viewed alongside other contextual evidence, such testimony may be useful to corroborate or bolster a court's broader evaluation of what a reasonable person's response would have been under the same circumstances.

Our conclusion here is consistent with the considerations that we have endorsed in a related context: proof of the intimidation element of bank robbery under 18 U.S.C. § 2113(a). As is the case with U.S.S.G. § 2B3.1(b)(2)(F), the test for intimidation under § 2113(a) is objective, asking "whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002). Applying that standard in a sufficiency-of-the-evidence challenge, we concluded that "[w]hile . . . the test for intimidation is essentially an objective one, evidence that the teller felt threatened is probative of whether a reasonable person would have been afraid under the same circumstances." *Id.* at 403 (internal quotation marks omitted). Accordingly, the teller's fear was relevant "in assessing the intimidating nature of [the defendant's] conduct." *Id.* The same analysis applies here.

Our conclusion is also consistent with the many other circuits that have long permitted some consideration of a victim's perceptions and state of mind in similar contexts that rely on an objective, reasonable-person standard. *See, e.g.*, *United States v. Davis*, 635 F.3d 1222, 1226 (D.C. Cir. 2011) (reviewing a district court's application of the sentencing enhancement for brandishing a dangerous weapon and indicating that the victim's perception "may be relevant to th[e] inquiry but is never controlling of the outcome" (alteration in original) (internal quotation marks omitted)); *United States v. Alaboud*, 347 F.3d 1293, 1298 (11th Cir. 2003) (citing supporting precedent from other circuits and holding that, even though an objective standard applies to the determination whether a defendant transmitted a threat to injure another in violation of 18 U.S.C. § 875(c), testimony concerning a victim's personal belief that the defendant's words were a threat was "relevant in the inquiry of whether a reasonable person would perceive the statements as a threat"); *United States v. Smith*, 131 F.3d 685, 689 (7th Cir. 1997) (evaluating jury instructions on intimidation under 18 U.S.C. § 2113(a), and concluding that "the teller's testimony that she in fact feared bodily harm to herself or someone else in the bank if she did not comply with Smith's demands can be considered in determining whether Smith's actions would have produced the fear of bodily harm in a reasonable person"); *United States v. Walker*, 835 F.2d 983, 987 (2d Cir. 1987) (noting, in the context of a forcible assault of a probation officer, that although "[t]he proper standard for determining whether the requisite degree of force was displayed . . . is an objective one, *i.e.*, whether the defendant's behavior would reasonably have inspired fear in a reasonable person . . . the victim's subjective state of mind is not irrelevant to determining whether the amount of force threatened or displayed was sufficient to make fear reasonable" (citation omitted)); *United States v. Cunningham*, 110 F. App'x 238, 242 (3d Cir. 2004) (unpublished opinion) ("Admittedly, the intimidation inquiry [under 18 U.S.C. § 2113(a)] is objective, not subjective, focusing on whether an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts. That said, asking [the teller] about her state of mind (*i.e.*, whether she was afraid) was at least minimally probative of whether a reasonable person in her position also would be afraid." (citation and internal quotation marks omitted)), *cert.*

*denied*, 543 U.S. 1130 (2005); *United States v. Muhammad*, 64 F. App'x 629, 630 (9th Cir. 2003) (unpublished opinion) ("We have consistently upheld the admission of teller testimony [concerning his subjective reaction to a defendant's conduct] as circumstantial evidence that, when combined with other evidence like a demand note, could allow a jury to infer objective intimidation [under 18 U.S.C. § 2113(a)].").[4] *But see Jennings*, 439 F.3d at 611 (concluding that "an examination into the subjective reaction of one specific teller is . . . inappropriate" because it risks "creat[ing] a windfall for defendants who fortuitously selected to victimize a bank teller with an unusually thick skin").

Applying these principles here, we conclude that, in spite of Wooten's use of the phrase, "I have a gun," the objective circumstances of the robbery do not warrant

---

[4] Although the dissent characterizes this inquiry as "perilous" because of its potential for elevating victim testimony to a dispositive level for district courts seeking to determine whether to grant a sentencing enhancement, Dissenting Op. at 19, we believe this concern to be overstated. As our opinion makes clear, testimony concerning a teller's personal perceptions may be *a* consideration in evaluating the broader question of a reasonable teller's response, but it cannot be *the only* consideration. Likewise, such testimony cannot be given undue weight. Moreover, our cases have already condoned the type of "terrified-teller testimony," *id.*, that, by shunning all subjective testimony, the dissent purports to avoid. *See, e.g.*, *United States v. Gilmore*, 282 F.3d 398, 403 (6th Cir. 2002) (permitting testimony from several tellers indicating that they personally experienced fear during a bank robbery as proof of the intimidation element under 18 U.S.C. § 2113(a), which employs a similar objective test); *United States v. Sogan*, 388 F. App'x 521, 524 (6th Cir. 2010) (unpublished opinion) (noting the tellers' subjective responses to the robbery when discussing the district court's application of the § 2B3.1(b)(2)(F) enhancement). Thus, by the dissent's reasoning, in order to ensure that all defendants are treated equally—a proposition with which we agree—a district court should, in appropriate circumstances, be able to consider testimony from tellers who exhibited a nonfearful response.

We recognize that an unpublished order in this circuit suggests the opposite conclusion. *United States v. Willis*, 48 F. App'x 542, 543 (6th Cir. 2002) (unpublished order), involved a robbery during which a robber gave a bank teller a demand note that stated: "There is a gun pointed at your head. Put the money in the bag. 20 minutes after I'm gone the guy with the gun will also leave. Try anything funny, you will be shot." Apparently unconvinced, the teller refused to cooperate. *Id.* At sentencing, the defendant attempted to argue that the noncooperation demonstrated that the teller never feared for her life and that the threat-of-death enhancement therefore should not apply. We rejected that argument, and in doing so, noted that "[t]he subjective belief or reaction of the teller to the demand note has no relevance to the [§ 2B3.1(b)(2)(F)] analysis." *Id.* We think our approach today is the better one. And because *Willis* was unpublished, we are not bound by its reasoning. *United States v. Dial*, 524 F.3d 783, 787 n.2 (6th Cir.), *cert. denied*, 555 U.S. 902 (2008). Moreover, *Willis* did not confront the more compelling circumstances now present before us. Instead, *Willis* involved a more direct personal threat and the use of a demand note, which may reasonably indicate a more seasoned robber. Thus, even if it had been considered, the scant mitigation evidence to which the defense pointed in *Willis* would not have outweighed the usual impact of the defendant's threatening words.

In addition, although we believe that our approach is entirely consistent with the Sentencing Guidelines, given that there is some division between the circuits with respect to the contextual factors that may be considered when determining whether a defendant made a threat of death for purposes of § 2B3.1(b)(2)(F), we do not think that the Sentencing Commission would be remiss to provide additional clarification on this issue. *Cf. Jansen v. United States*, 369 F.3d 237, 250 (3d Cir. 2004) (Alito, J., concurring) (requesting that the Sentencing Commission address an ambiguous Guideline provision that had been the subject of a circuit split).

application of the threat-of-death enhancement.  A number of factors support this determination.  First, Mason's description of Wooten's nonaggressive demeanor suggests that Wooten would not have appeared threatening to a reasonable observer.  Wooten approached the tellers calmly, placed both hands in a visible position on the counter, and softly said that he was engaged in a robbery.  Wooten's demeanor was described as "nonthreatening," and Wooten was not engaged in any conduct that would objectively suggest an intent to "hurt [Mason] or anyone in the bank."  R. 41 (Sentencing Hr'g Tr. at 9).  Such behavior would not convey to a reasonable teller in Mason's position that Wooten was prepared to use deadly force.

Second, the robbery did not contain any hallmarks of experienced bank robbers, such as demand notes, which may contribute to the intimidating nature of an encounter.  *Cf. United States v. Pacheco*, 466 F. App'x 517, 523 (6th Cir. 2012) (unpublished opinion) ("A demand note itself, being a tool of the trade of bank robbers, is a form of intimidation." (quoting *United States v. Smith*, No. 92-6311, 1993 WL 303359, at *1 (6th Cir. Aug. 9, 1993)).  Wooten wore no mask or disguise and appeared no different than an ordinary customer.  By all accounts, Wooten did not assertively command that Mason hand over the money.  Instead, Wooten rather amateurishly made repeated but quiet demands in an attempt to convince Mason that he was truly engaged in a robbery.  Thus, these facts also support the conclusion that Wooten's conduct was not objectively threatening.

Finally, Mason himself testified both at sentencing and in an affidavit that he never felt threatened by Wooten.  Instead, Mason explained that he handed over the money because he had been trained to do so if he were ever presented with a robbery demand, not because of any perceived danger.  Based on the unchallenged description of the robbery, Mason's response does not appear to be that of an unusually fearless individual, and instead corroborates the objective descriptions of Wooten's conduct.  That a teller at a separate unsuccessful bank robbery laughed at Wooten's prior similar attempt further supports Mason's assessment of Wooten's conduct and demeanor, as well as Mason's resulting belief that he was never in harm's way.  Like Mason, that

earlier teller did not discern any real threat. Thus, taken as a whole, the overall circumstances were sufficient to mitigate the force of Wooten's assertion that he had a gun, and Wooten's conduct falls short of warranting the threat-of-death enhancement under § 2B3.1(b)(2)(F).

## III.  CONCLUSION

We recognize that, in most cases, a bank teller's recollection of the circumstances of a robbery will not be as favorable to a defendant as it is to Wooten here. Indeed, in some instances, such testimony may in fact work against a defendant seeking to avoid the two-level enhancement under § 2B3.1(b)(2)(F). Nevertheless, under the particular circumstances of this case, Mason's reasonable perceptions, in combination with the other characteristics of Wooten's offense conduct, objectively lead to the conclusion that a reasonable teller in Mason's shoes would not have perceived a threat of death. Accordingly, because the district court erred in finding that Wooten had made a threat of death within the meaning of § 2B3.1(b)(2)(F), we **REVERSE** the district court's imposition of the threat-of-death enhancement, **VACATE** Wooten's sentence, and **REMAND** for resentencing in accordance with this opinion.

—————————

**DISSENT**

—————————

SUTTON, Circuit Judge, dissenting. I can think of just one reason why a bank robber would tell a bank teller he has a gun: to show he means business. That is what James Wooten did. On September 23, 2010, Wooten went to the Green Bank in Gordonsville, Tennessee to rob it. The bank teller did not take him seriously when he twice said, "I am going to rob you." So Wooten upped the ante: "I have a gun. Give me your money." R. 41 at 5. The teller, no surprise, now took him seriously—and complied. The reason the threat worked, the reason Wooten gave it, is that it conveys an unmistakable message: hand over the money or I will shoot you—point blank with only the upper half of your body as a target. Because this message amounts to a "threat of death," U.S.S.G. §2B3.1(b)(2)(F), the district court permissibly applied the two-level sentencing enhancement.

The enhancement applies when the robber "engage[s] in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." U.S.S.G. § 2B3.1 cmt. n.6; *United States v. Clark*, 294 F.3d 791, 795 (6th Cir. 2002). As an illustration, the guideline commentary says that the statement, "Give me the money or I will shoot you," qualifies as a threat of death. U.S.S.G. § 2B3.1 cmt. n.6. Wooten, true enough, did not expressly say that. He demanded money and informed the teller he had a gun, leaving the implication "or I will shoot you" unsaid. But what reasonable person would take comfort in the difference between the two statements?

That is all the more true when we remember that the relevant guideline used to require an "*express* threat of death" to trigger the enhancement and the commentary listed "Give me the money or I will shoot you" as an example of an express threat. *United States v. Alexander*, 88 F.3d 427, 428 (6th Cir. 1996) (emphasis added) (quoting U.S.S.G. § 2B3.1(b)(2)(F) (1994)). The Sentencing Commission deleted "express" from the guideline in 1997 and clarified that "the defendant does not have to state expressly his intent to kill the victim," all of which establishes that an implied threat will do.

U.S.S.G. § 2B3.1 cmt. n.6.  If "Give me the money or I will shoot you" qualifies as an *express* threat of death, then surely "I have a gun.  Give me your money" constitutes an *implied* threat of death.  That is just what happened.

Until today, all of our cases were in alignment on this point.  We have applied the threat-of-death enhancement to bank robbers who made threats just like the one Wooten made.  In one case, the bank robber passed the teller a note saying, "THIS IS A HOLD-UP I HAVE A GUN 100's 50's and 20's."  *United States v. Winbush*, 296 F.3d 442, 442 (6th Cir. 2002).  If the enhancement covered that threat, as we held it did, it surely covers this one, as there is no material difference between the two.  In another case, we applied the enhancement to a bank robber who passed the teller a note saying, "I have a gun.  Do what you are told and you won't get hurt."  *United States v. Clark*, 294 F.3d 791, 795 (6th Cir. 2002).  The language in each of these notes, we held, would "instill in any reasonable person" a fear of death.  *Winbush*, 296 F.3d at 443; *Clark*, 294 F.3d at 795.  The same is true of other cases.  *See United States v. Moore*, 447 F. App'x 721, 723 (6th Cir. 2012) (upholding application of enhancement where bank robber passed teller a note saying, "I have a gun.  Give me the cash"); *United States v. Sogan*, 388 F. App'x 521, 523 (6th Cir. 2010) (upholding application of enhancement where defendant told tellers to "give me your money" and placed his hand on his waist, implying he had a gun).  If these cases were correctly decided, I do not understand how this one could be.

Shift the focus to the other circuits in the country, and you will not find a single dance partner for today's decision.  Until today, every bank robber who appealed a threat-of-death enhancement after saying "I have a gun" (or words to that effect) has lost under the current version of the guideline.

Here are the published cases.  *See United States v. Gray*, 177 F.3d 86, 88 (1st Cir. 1999) ("I got a gun.  Give me all the money and no one will get hurt."  "Give me your money or I'll start shooting."); *United States v. Burns*, 160 F.3d 82, 83 (1st Cir. 1998) ("I have a gun!  Don't make me use it."); *United States v. Jennette*, 295 F.3d 290, 291 (2d Cir. 2002) ("I have a gun."); *United States v. Day*, 272 F.3d 216, 217 (3d Cir. 2001)

("Put some money on the counter. No dye packs. I have a gun."); *United States v. Figueroa*, 105 F.3d 874, 876 (3d Cir. 1997) ("I have a gun. Give me all the money."); *United States v. Franks*, 183 F.3d 335, 336 (4th Cir. 1999) ("No dye packs. I have a gun. I have nothing to lose."); *United States v. Soto-Martinez*, 317 F.3d 477, 478 (5th Cir. 2003) ("I have a gun. I just want money. Start with the $100.00. Stay Quiet!!!"); *United States v. White*, 639 F.3d 331, 334 (7th Cir. 2011) ("I have a gun. Give me the money in the register. No dye packs, no silent alarms, and no one will get hurt. Do it quickly."); *United States v. Dortch*, 628 F.3d 923, 924 (7th Cir. 2010) ("I have a gun. Please give me the money out of your drawers. No dye pack. I will be forced to do anything that gets in my way. Nod your head if you understand. You have 30 seconds. Don't push alarm or else."); *United States v. Gibson*, 155 F.3d 844, 845 (7th Cir. 1998) ("This is a robbery. Give me all your money. No funny stuff. I have a gun."); *United States v. Carbaugh*, 141 F.3d 791, 792 (7th Cir. 1998) ("This is a robbery. Put the money in the bag. I have a gun."); *United States v. Jones*, 83 F.3d 927, 928 (7th Cir. 1996) ("[Do] not pull any alarms, because if you do, I have a gun and I'll use it."); *United States v. Hunn*, 24 F.3d 994, 995 (7th Cir. 1994) ("This is a robbery, I have a gun, give me your money, don't try anything foolish." "This is a hold-up. I have a gun."); *United States v. Robinson*, 20 F.3d 270, 276 (7th Cir. 1994) ("I have a gun and am not afraid to use it." "This is a stickup. I have a gun."); *United States v. Cadotte*, 57 F.3d 661, 661–62 (8th Cir. 1995) (robber said "This is a robbery," and told the teller he had a gun and "no one will get hurt" if she gave him the money); *United States v. Jennings*, 439 F.3d 604, 605 (9th Cir. 2006) ("Put all your money on top of the counter. I have a gun. Just do it now."); *United States v. Ellis*, 525 F.3d 960, 964 (10th Cir. 2008) ("I have a gun and I want you to give me all of your large bills or I'll use it!! Place all of it in the bag. From all registers."); *United States v. Arevalo*, 242 F.3d 925, 928 (10th Cir. 2001) ("I have a gun and am willing to use it."); *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002) ("You have ten seconds to hand me all the money in your top drawer. I have a gun. Give me the note back now.").

Here is a representative sample of the unpublished cases. *See, e.g.*, *United States v. Hayes*, 142 F. App'x 476, 478 (1st Cir. 2005) ("I have a gun."); *United States v.*

*Baynes*, 369 F. App'x 365, 367–68 (3d Cir. 2010) ("[N]o dye pack, no tracker, 20's, 50's and 100's or I'm going to pull this [gun]."); *United States v. Watson*, 257 F. App'x 556, 558 (3d Cir. 2007) ("I HAVE A *GUN* GIVE ME THE MONEY NOW!"); *United States v. Evans*, 144 F. App'x 319, 320 (4th Cir. 2005) ("I have a gun. Don't make a sound, no die pack. Put the money on the counter. $100, $50, $20 packs. No alarm."); *United States v. Barkley*, 100 F. App'x 899, 900 (4th Cir. 2004) ("Don't do anything funny or I will shoot you." "Don't make me use my gun."); *United States v. Martin*, 47 F. App'x 218, 219 (4th Cir. 2002) ("I have a gun. Put all your money in the envelope." "This is a robbery. I have a gun."); *United States v. Crawford*, No. 00-4275, 2000 WL 1268783, at *1 (4th Cir. Sept. 7, 2000) (defendant passed teller "a note on which he wrote that he had a gun"); *United States v. Whitener*, No. 99-4003, 1999 WL 519175, at *1 (4th Cir. July 22, 1999) ("I have a gun this is a holdup!! Place $1200 (Twelve Hundred Dollars) in this envelope now and no one else gets hurt LARGE BILLS PLEASE."); *United States v. Hass*, No. 99-2750, 1999 WL 1136836, at *1 (7th Cir. Dec. 8, 1999) ("I have a gun. Don't try anything tricky."); *United States v. Ward*, 56 F. App'x 759, 759 (8th Cir. 2003) ("Don't say a word. I have a gun. No joke."); *United States v. Pinney*, No. 00-1656, 2000 WL 1694062, at *1 (8th Cir. Nov. 14, 2000) ("I have a gun. I don't want to use it. Just give me your money. Thanks."); *United States v. Dawson*, 220 F. App'x 466, 467 (9th Cir. 2007) (defendant "told the bank teller he had a gun"); *United States v. O'Neil*, 249 F. App'x 497, 497 (9th Cir. 2007) ("I have a gun."); *United States v. Pastor*, 177 F. App'x 565, 566 (9th Cir. 2006) ("I have a gun. No dye packs. No tricks."); *United States v. Barrientos*, 13 F. App'x 551, 552 (9th Cir. 2001) ("Give me all your money. I have a gun."); *United States v. Kaimana*, 13 F. App'x 733, 733 (9th Cir. 2001) ("I got a gun give me all the money."); *United States v. Witt*, No. 99-30299, 2000 WL 553907, at *1 (9th Cir. May 4, 2000) ("This is a robbery I have a gun give me all the money and I won't shoot."); *United States v. Quammen*, No. 99-10060, 1999 WL 439026, at *1 (9th Cir. June 16, 1999) ("I am armed! Quickly, all the money!"); *United States v. Campbell*, 139 F. App'x 920, 922 (10th Cir. 2005) ("Put unbundled 100s and 50s in an envelope, no dye pack, no alarm. I have a gun."); *United States v. Yoho*, 147 F. App'x 794, 795 (10th Cir. 2005) ("Give me all of the 100s and 50s. I have a

gun."); *United States v. Ross*, 27 F. App'x 989, 990 (10th Cir. 2001) ("I have a gun in this bag, give me all of your money and do it fast."); *United States v. Zackary*, 427 F. App'x 850, 851 (11th Cir. 2011) ("I have a gun."); *United States v. Perez*, 350 F. App'x 425, 428 (11th Cir. 2009) ("I have a gun and will use it if something goes wrong."); *United States v. Pruitt*, 344 F. App'x 532, 536 (11th Cir. 2009) ("There [are] 2 sets of eyes on you . . ."; "We are watching and listening"; "Cooperate or boom and bang!"); *United States v. Earnest*, 151 F. App'x 842, 843 (11th Cir. 2005) ("I have a gun, do not alert anyone, give me all the money from the drawer now."); *United States v. Szabo*, 143 F. App'x 287, 287 (11th Cir. 2005) ("I have a gun."); *United States v. Cliff*, 138 F. App'x 246, 247 (11th Cir. 2005) ("This is a robbery.  Give me the Cash, I've got a gun.").

Best I can tell, no case from any circuit, published or unpublished, has reversed a threat-of-death enhancement applied to a bank robber who told the teller he had a gun under the current version of the guideline.  What if anything makes James Wooten's case so unusual?  What distinguishes his conduct from the legions of bank robbers who made similar threats and received a threat-of-death enhancement?

Three things, says the majority. *First*, "the robbery did not contain any hallmarks of experienced bank robbers, such as demand notes" or a "mask or disguise."  But the source of the idea that "experienced bank robbers" use demand notes and masks and the rest are less-dangerous neophytes is a mystery.  John Dillinger did not use demand notes or wear a mask. *See* Dary Materia, John Dillinger:  The Life and Death of America's First Celebrity Criminal 47 (2004).  Neither did Bonnie Parker or Clyde Barrow. *See* E.R. Milner, The Lives and Times of Bonnie and Clyde 114–15 (1996).  While Willie Sutton (no relation) sometimes wore disguises—dressing up as a policeman, as a postman, even as a window cleaner—he apparently did not use demand notes. *See* Gangsters, Swindlers, Killers, and Thieves:  The Lives and Crimes of Fifty American Villains 218 (Lawrence Block, ed., 2004).  Yet these bank robbers all qualified as experienced—and dangerous.

*Second*, Wooten exhibited a "nonaggressive demeanor" during the robbery, "approach[ing] the tellers calmly, plac[ing] both hands in a visible position on the counter, and softly sa[ying] that he was engaged in robbery." So what. Not all bank robbers scream and yell, drawing attention to themselves in the process. That was not Willie Sutton's style. *See id.* And not all people who speak softly are unarmed and unwilling, as one of our Presidents liked to imply. Keeping a low profile at all events is not a bad idea if the robber wishes to make a successful escape.

Nor, it seems to me, is the demeanor of people who threaten others by saying "I have a gun" usually relevant to this kind of crime or any other. If a passenger on an airplane says, "I have a gun. Let me into the cockpit," should an air marshal stop and consider the prospective terrorist's demeanor, tone of voice and hand placement before taking action? What about a student who says "I have a gun" in school? Should the principal undertake the same detailed analysis before calling the police? In bank robberies, as in other settings, the threat "I have a gun" is more than enough to prompt people to act out of reasonable fear for their lives and the lives of others.

*Third*, the bank teller testified that he did not feel threatened by Wooten. *Supra* at 12. This is the least relevant, and the most dangerous, of rationales. The relevant inquiry is an objective one: Would the robber's conduct instill a fear of death in a "reasonable person"? U.S.S.G. § 2B3.1 cmt. n.6; *Clark*, 294 F.3d at 795. The point of an objective inquiry is to make a subjective one beside the point. *See Whren v. United States*, 517 U.S. 806, 813 (1996). The question is what the defendant did, not how a range of victims—meek, brazen, indifferent—reacted to what he did. One teller might faint in response to an I-have-a-gun bank robbery and another might respond by saying "Make my day." The guideline requires an enhancement in both settings, not one of them. Even if subjective impressions somehow mattered, it surely should be the job of the district judge, who saw the teller testify about the encounter, to assess the impact of the testimony, not us, who have only a cold transcript to work with. *See United States v. Poynter*, 495 F.3d 349, 351–52 (6th Cir. 2007). Notably, every one of the majority's

citations on this point—not one of which concerns the threat-of-death enhancement—involves subjective impressions that *supported* the fact-finder's decision.

This inquiry also is a perilous one. Do we really want to make the testimony of victims of crime relevant to questions about whether the conduct of criminal defendants would objectively instill fear? I have a strong suspicion that this inquiry will do far more harm than good to defendants seeking even-handed and fair-minded sentencing hearings in the future. What of the robber who demands money but does not say he has a gun? Could a bank teller nonetheless testify, not implausibly, that she saw her life pass before her eyes during the robbery? Could a sentencing court rely on this testimony in applying the enhancement? I think not, and I hope not. But the majority's decision, denying the enhancement based on fearless-teller testimony, surely permits just such a sentencing increase, granting the enhancement based on terrified-teller testimony. Both enhancements are permitted or neither is.

I do not doubt that there are *some* cases where the objective contextual factors surrounding the threat detract from a reasonable fear of death. A would-be robber who says he has a gun but brandishes "a banana," *supra* at 7, or wields "what [is] quite obviously a toy," *United States v. Jennings*, 439 F.3d 604, 611 (9th Cir. 2006), will not warrant the enhancement. *See United States v. Gibson*, 155 F.3d 844, 847 (7th Cir. 1998). But no circuit has seen such a case, and there is a good reason why: No self-respecting prosecutor would ask for such an enhancement.

In the final analysis, I see nothing in Wooten's actions that distinguishes this case from our prior published decisions, *Winbush*, 296 F.3d at 443; *Clark*, 294 F.3d at 795, or for that matter from the legion of decisions from other circuits upholding application of the enhancement based on similar threats. The majority seeing things differently, I respectfully dissent.